**LETHU INC., Thu Le, and Fair Oaks Housing Corp., Appellants,**

v.

**CITY OF HOUSTON, Appellee.**

No. 01–98–00630–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 18, 2000.

John Quinlan, Dale F. Carrington, Houston, for appellant.

Judy K. Hatfield, Houston, for appellee.

Panel consists of Chief Justice SCHNEIDER and Justices ANDELL and DUGGAN.*

## OPINION

LEE DUGGAN, Jr., Justice (Retired).

This is an appeal of a judgment in favor of the City of Houston, ("the City"), in a suit brought by the owners of two businesses after the City erected a barricade

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

on the street abutting their properties. Appellants, Lethu, Inc., Thu Le, (jointly referred to as "Lethu") and Fair Oaks Housing Corp. ("Fair Oaks") each urge three points of error on appeal, challenging the trial court's judgment in favor of the City. We affirm in part, reverse in part, and remand to the trial court for further proceedings.

## I. Facts

Before January 1995, Fair Oaks Road was a two-way street that carried traffic to and from Lawndale and Wayside, a primarily single-family residential area. Fair Oaks is a 122-unit apartment complex located along the west side of Fair Oaks Road, and Lethu's convenience store is located on the east side. The apartment complex and the convenience store were accessible from both Lawndale and Wayside via Fair Oaks Road.[1]

In January 1995, the City installed a metal barricade directly in front of both the apartment complex and the convenience store, closing off Fair Oaks Road to through traffic between Lawndale and Wayside. The barricade spans the full width of the public street—it is 45 feet long, seven feet high, and mounted on a 6½ inch high concrete base. The City intended to provide a safer environment for the local residents by installing the barricade and eliminating the traffic.

The barricade was installed in front of Fair Oaks Apartments, directly between two entrances to the apartment complex. The construction did not take place at an intersection, despite a city ordinance requiring construction to be at an intersection. After the construction, the Fair Oaks apartment complex was effectively situated on two cul-de-sacs, one entered from Wayside and the other from Lawndale. However, the apartment complex was no longer accessible by traffic from

1. Map of location attached as Appendix 1.

Lawndale because the Lawndale entrance to the complex had to be closed.[2]

The barricade also affected Lethu's convenience store, which is directly across from the apartment complex. After the construction, the convenience store was situated on a cul-de-sac, accessible only from Wayside, but no longer from Lawndale.[3]

## II. Procedural History

Fair Oaks and Lethu each sued the City for inverse condemnation and private nuisance. Fair Oaks additionally sought a declaratory judgment; Lethu additionally alleged tortious interference. The trial court rendered summary judgment in favor of the City on all claims except inverse condemnation. A hearing was conducted on the inverse condemnation claim to determine whether Fair Oaks or Lethu experienced a material and substantial impairment of access to their property. *See State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex.1988) (holding the trial court must determine, before trial for inverse condemnation, whether a material and substantial impairment of access occurred). At the end of the hearing, the trial court found that neither Fair Oaks or Lethu, as a result of the City's actions, suffered a material and substantial impairment of access to their property as a mat-

ter of law, and rendered judgment in favor of the City.[4]

On appeal, Fair Oaks and Lethu urge a total of six points of error. We discuss them in turn.

## III. Inverse Condemnation

### A. Case Law

■ To recover on an inverse condemnation claim, a property owner must establish that (1) the State or other governmental entity intentionally performed certain acts (2) that resulted in the taking, damaging, or destruction of the owner's property (3) for public use. *See Steele v. City of Houston*, 603 S.W.2d 786, 788–92 (Tex. 1980); *Watson, Inc. v. City of Houston & DeVillier*, 998 S.W.2d 637, 640 (Tex.App.— Houston [1st Dist.] 1999, pet. denied). This protection comes from article I, section 17 of the Texas Constitution, which states, "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made...."

■ An abutting landowner possesses an easement of access which is a property right. *State v. Heal*, 917 S.W.2d 6, 9–10 (Tex.1996) (citing *DuPuy v. City of Waco*, 396 S.W.2d 103, 108 (Tex.1965)). This easement is not limited to a right of access to the system of public roads. *Heal*, 917 S.W.2d at 9–10. When an easement of

2. There were two entrance gates to the apartment complex from Fair Oaks Road. However, immediately after the City installed the barricade, the management of the apartment complex was forced to close the south gate (accessible from Lawndale) because of the hazard posed to residents by drivers who wanted to circumvent the barricade. Drivers would go through the U-shaped driveway of the apartment complex, or they would drive onto the front lawn of the property and then down the other side of the barricade.

3. Although Le has the same two driveways to his property that he had before the barricade was installed, and they were not altered by the City, he said delivery trucks do not come to his store because they have difficulty maneuvering around his property. Before the barricade was installed, the supply trucks

would enter one driveway and exit another. Now, they must turn around and leave from the same driveway that they enter. He later admitted that the trucks do not come to his store because he does not make the minimum $1,000 purchase of supplies.

4. The trial court's conclusion of law 5 states:

The Plaintiffs' access rights have not been materially and substantially impaired by the City. The type and character of the roadways leading to their properties were not changed in structure, as was the case in *DuPuy*. Any impairment of access to their businesses was instead a result of circuity of travel, which does not constitute a compensable "taking." *State v. Schmidt*, 867 S.W.2d 769 (Tex.1993).

access is the property right involved in an inverse condemnation claim, a landowner is entitled to compensation for damages resulting from a material and substantial impairment of access. *Id.* at 10; *City of Waco v. Texland Corp.*, 446 S.W.2d 1, 2 (Tex.1969). This includes compensation for the diminution in value of the property resulting from the loss of access. *Heal*, 917 S.W.2d at 10; *DuPuy*, 396 S.W.2d at 108. A landowner does not have a property right or interest in traffic; therefore, a landowner is not entitled to damages resulting from the diversion of traffic. *Schmidt*, 867 S.W.2d at 774.

### B. Analysis

■ In Fair Oaks' point of error one and Lethu's point of error one, they both challenge the trial court's conclusion of law that they did not experience a material and substantial impairment of access to their properties from the barricade. In so holding, the trial court relied on and cited to *Schmidt*, stating that any impairment of access to their businesses was a result of circuity of travel, a noncompensable taking. For the reasons that follow, we disagree with the trial court's conclusion, and we hold that Fair Oaks and Lethu established that their easement rights were materially and substantially impaired as a matter of law.

■ Whether there was a material and substantial impairment of access is a question of law, which we review without deference to the trial court's determination. *Heal*, 917 S.W.2d at 9. The City urges this Court, as it did the trial court, to rely on *Schmidt* for the proposition that there has not been a material and substantial impairment of access. Instead, the City argues that the installation of the barricade resulted in nothing more than a diversion of traffic and a circuity of travel. It claims that Fair Oaks' and Lethu's underlying complaint is that their businesses became less visible after installation of the barricade and that traffic is no longer passing through to their businesses. Therefore, the City argues, their claim is for non-compensable damages.

*Schmidt* does not apply here because it did not involve easement rights or the impairment of access.[5] Instead, it involved the taking of property (a seven-foot strip) to convert and widen a roadway into a controlled access highway. 867 S.W.2d at 770–72. *Schmidt's* landowners were initially awarded compensation for the diminution in the value of the remainder due to a diversion in traffic, an increased circuity of travel to the property, a lessened visibility to passers-by, and the inconvenience of construction activities. *Id.* at 770. However, the Supreme Court reversed the damages awards, because a landowner does not have a property right or interest in traffic.[6] *Id.* at 774. Therefore, because

---

**5.** The City relies on several other cases for the same proposition, and they do not apply to this situation either. In *State Highway v. Humphreys*, 58 S.W.2d 144, 145 (Tex.App.—San Antonio 1933, writ ref'd), no impairment of access was claimed because of highway rerouting. *City of San Antonio v. Olivares*, 505 S.W.2d 526, 527 (Tex.1974), involved the partial closing of an alley behind a hotel. The hotel still had access to its property from two other streets. The court denied recovery to the hotel owners who sought lost profit damages. *Id.* at 530. In *City of Houston v. Fox*, 444 S.W.2d 591, 592 (Tex.1969), the City converted one of two fronting streets of a business into a one-way street and narrowed the other. The court held that the redesign of Houston city streets, which resulted in less

convenient access to a retail business, did not result in a compensable taking. *Id.* at 593.

**6.** The court reasoned that:

The benefits which come and go from the changing currents of travel are not matters in respect to which any individual has any vested right against the judgment of public authorities.... If the public authorities could never change a street or highway without paying all persons along such thoroughfares for their loss of business, the cost would be prohibitive. The highways are primarily for the benefit of the traveling public, and are only incidentally for the benefit of those who are engaged in business along its way. They build their businesses knowing that new roads may be built that will largely take

there is no property right or interest in traffic, a landowner is not entitled to damages resulting from the diversion of traffic. *Id.*

### C. Damages Pleaded by Fair Oaks and Lethu

To determine whether Fair Oaks and Lethu are entitled to compensation for inverse condemnation, we must focus on the property rights involved and the damages they claimed.

Fair Oaks' pleadings indicate that its claim for damages includes, among other things: (1) damage to its private rights of easement over Fair Oaks Road; (2) diminution in the value of its property resulting from the impairment of access; and (3) damage from a material and substantial impairment of access to the property. Thus, these damages are not excluded by *Schmidt*, but instead are compensable under *Heal*, 917 S.W.2d at 9–11, *DuPuy*, 396 S.W.2d at 108, and *Texland*, 446 S.W.2d at 2.

Lethu's pleadings indicate its claim for damages was based on (1) the loss of income and business opportunity; and (2) the decrease in the value of the real property because of the barricade. Under *Schmidt*, Lethu is not entitled to damages resulting from the diversion or loss of traffic (i.e., lost income and business opportunity) because there is no property interest in traffic. *See* 867 S.W.2d at 773. However, like Fair Oaks, Lethu is entitled to compensation for the diminution in value of the property resulting from a material and substantial impairment of access. *See Heal*, 917 S.W.2d at 9–11; *DuPuy*, 396 S.W.2d at 108; and *Texland*, 446 S.W.2d at 2.

### D. Fair Oaks and Lethu Suffered a Material and Substantial Impairment of Access

1. *Safety Hazards Created by Barricade*

Fair Oaks argues that *State v. Northborough*, 987 S.W.2d 187 (Tex.App.—Houston [14th Dist.] 1999, pet. denied), is similar to this case with respect to the safety hazards forcing the closure of the entrance to the property. In *Northborough*, it was necessary to close the entrance to the property for safety hazards created by the widening of a highway.[7] 987 S.W.2d at 193. As in *Northborough*, Fair Oaks was forced to close its south entrance for safety reasons, leaving its residents with access solely from one dead-end street. There is evidence that Fair Oaks was forced to close the south entrance because the traffic the City intended to eliminate by installing the barricade was diverted into the apartment complex—it passed through the complex's U-shaped driveway, from one entrance to the other, to circumvent the barricade. Other drivers drove up onto the front lawn of the property and down the other side of the barricade to circumvent it. The *increased traffic through the complex* posed an increased risk of danger to residents. Gilda Rodarte, the apartment manager, testified that about 30 cars per hour flowed through the apartment complex when the barricade was first put into place. The south gate was closed a day and a half after the barricade was installed to stop the traffic.

There was also evidence that showed emergency vehicles had difficulty both in accessing the property and in passing down the street. Rodarte and one of Fair

---

away the traveling public. This is a risk they must necessarily assume.
867 S.W.2d at 773 (quoting *State Highway Comm'n v. Humphreys*, 58 S.W.2d 144, 145 (Tex.App.—San Antonio 1933, writ ref'd)) (citations omitted).

7. Although there was testimony that, before the barricade was installed, the south gate was locked more often than it was open be-

cause of security concerns, that overlooks the fact that Fair Oaks was forced to close the south gate permanently because of a different safety concern created by the barricade. Closing off the south entrance was a means of controlling access to the apartments. However, Fair Oaks chose, for financial reasons, not to install a restricted-access gate.

Oaks' residents, Sonya Martinez, testified that fire trucks and ambulances have had difficulty accessing the apartment complex and also in passing through the barricade.[8] On one occasion, Rodarte said firemen came into the leasing office and asked her how to get through the barricade. Once she told them there was supposed to be a 911 box with a key, it took them approximately five minutes to cross over the barricade. On another occasion, she said, she saw a firetruck turn around after unsuccessfully trying to pass through the barricade. Martinez testified that she called for an ambulance for her asthmatic son and it took approximately 20 minutes for the ambulance to reach her. The ambulance had come to Fair Oaks from Lawndale, but it could not enter the property because of the barricade and the closed south entrance gate.

### 2. Creation of Cul–de–Sac

■ Fair Oaks and Lethu rely on *DuPuy* to argue that the creation of a cul-de-sac *ipso facto* establishes a material and substantial impairment of access. We agree that, generally, an abutting property owner left in a cul-de-sac is entitled to damages. *See DuPuy*, 396 S.W.2d at 110. On the record before us, it appears that Fair Oaks Road is the only public street accessible to Fair Oaks and Lethu; Fair Oaks' apartment complex and Lethu's store do not abut any other public street. Thus, the barricade impairs their access to the only abutting street, and the street is impaired, not by a narrowing or widening of the road, as in other cases, but by a barricade intended to deny all access through the street. This barricade can in no way be characterized as a public improvement, as it is nothing more than a permanent physical obstruction.[9] *Compare Deyeso v. City of Alamo Heights*, 594 S.W.2d 123, 124–25 (Tex.App.—San Anto-

nio 1979, no writ) (stating city has duty to protect public streets from permanent obstructions); *City of Fort Worth v. Southwest Magazine*, 358 S.W.2d 139, 142 (Tex. App.—Fort Worth 1962, writ ref'd n.r.e.) (same). The easement right is not meant just to protect access to and from the property, but also to protect the private owner's access to and from the public roads. Here, Fair Oaks and Lethu's easement rights are being subjected to a "perpetual servitude" for the benefit of the residents in the neighborhood. *See DuPuy*, 396 S.W.2d at 108 (explaining the concept of article 1, section 17 of the Constitution).

### 3. Conclusion

As explained, the record shows that access to and from Fair Oaks was materially and substantially impaired by the installation of the barricade, a permanent physical obstruction. Because of the diversion of traffic onto Fair Oaks' property, it was forced to close the south gate. Further, Fair Oaks and Lethu were left abutting a cul-de-sac. Therefore, we hold Fair Oaks and Lethu suffered a material and substantial impairment of access to their property.

We sustain Fair Oaks' point of error one.

We sustain Lethu's point of error one.

## IV. Private Nuisance

In Fair Oaks' point of error two and Lethu's point of error three, they argue that the trial court erred in rendering summary judgment against them on their private nuisance claim. The City moved on alternative grounds for summary judgment—under Rule 166a(c) and Rule 166a(i). Having moved for summary judgment on alternative grounds, the City was

---

**8.** Clearly, the City's reference to the barricade as an "emergency access gate" is a misnomer.

**9.** Indeed, during oral argument before this Court, Fair Oaks informed the Court that the

fire department has reported this barricade should be removed. The City informed the Court that the barricade has been lowered to facilitate access of ambulances and fire trucks.

entitled to summary judgment if it established it was entitled to summary judgment as a matter of law (under Rule 166a(c)), or if Lethu and Fair Oaks failed to present more than a scintilla of evidence that raised a genuine issue of material fact on each element of their claims for private nuisance (under Rule 166a(i)).

We examine first whether the City established it was entitled to judgment as a matter of law under Rule 166a(c).

## A. Standard of Review Under Rule 166a(c)

Summary judgment is proper only when a movant establishes there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Marchal v. Webb*, 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied). A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action. *Johnson*, 891 S.W.2d at 644; *Marchal*, 859 S.W.2d at 412. Thus, to be entitled to judgment, the City had to negate an element of Fair Oaks' and Lethu's claims for private nuisance.

Once the movant has established a right to a summary judgment, the burden shifts to the nonmovant. *Marchal*, 859 S.W.2d at 412. The nonmovant must respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Marchal*, 859 S.W.2d at 412.

On appeal, we cannot consider any ground for reversal that was not expressly presented to the trial court by written motion, answer, or other response to the motion for summary judgment. *Clear Creek Basin Auth.*, 589 S.W.2d at 677; *Hussong v. Schwan's Sales Enter., Inc.*, 896 S.W.2d 320, 323 (Tex.App.—Houston [1st Dist.] 1995, no writ). We will affirm the summary judgment if any of the theories advanced in the motion for summary judgment is meritorious. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996); *Cigna Ins. Co. v. Rubalcada*, 960 S.W.2d 408, 411 (Tex.App.—Houston [1st Dist.] 1998, no pet.).

A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land. *Jamail v. Stoneledge Condominium Owners Ass'n*, 970 S.W.2d 673, 676 (Tex.App.—Austin 1998, no pet.). It is a condition which substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. *City of Tyler v. Likes*, 962 S.W.2d 489, 503–04 (Tex.1997). Actionable nuisance arises in three possible ways: (1) intentional invasion of another's interest; (2) negligent invasion of another's interest; or (3) other conduct that invades another's interest which is culpable because it is abnormal and out of place in its surroundings. *Id.* Fair Oaks and Lethu alleged that the City was liable for each type of nuisance.

As grounds for summary judgment on Fair Oaks' and Lethu's private nuisance claims, the City argued that (1) it was protected from liability by governmental immunity; and (2) the barricade did not invade Fair Oaks' and Lethu's property interests.

### 1. Governmental Immunity

The City was entitled to summary judgment based on governmental immunity if the private nuisance was caused by the negligent performance of a governmental function. *See Likes*, 962 S.W.2d at 504; *Shade v. City of Dallas*, 819 S.W.2d 578, 581(Tex.App.—Dallas 1991, no writ) (stating city is entitled to immunity if the nuisance is caused by the negligent performance of a governmental function, but not for nuisance caused by non-negligent performance of a governmental function). However, Fair Oaks and Lethu's claims

for private nuisance were based on intentional *and* negligent conduct; whether the City's conduct was intentional or negligent is a question of fact. *See Bible Baptist Church v. City of Cleburne*, 848 S.W.2d 826, 830 (Tex.App.—Waco 1993, writ denied) (reversing summary judgment because of fact questions concerning whether the city acted intentionally or negligently). Thus, summary judgment was improper on their claims for private nuisance based on intentional conduct.

### 2. *Invasion of Property Interests*

The City also argued it was entitled to summary judgment as a matter of law because Fair Oaks and Lethu did not show that they had a property right in the volume of traffic or visibility of their property to passersby. Although the City is correct that there is not a property right in the volume of traffic or visibility of property, this argument does not adequately address Fair Oaks' and Lethu's claims for private nuisance. *See Schmidt*, 867 S.W.2d at 774 (stating a landowner has no vested interest in the volume or route of passersby or in the visibility of property). As explained in our discussion of the inverse condemnation claim, the property right involved in Fair Oaks and Lethu's claims is their easement of access, which is a recognized property right. The barricade is alleged to have interfered in the private use and enjoyment of their easement. Thus, this argument is not a sufficient theory to support summary judgment.

### B. Standard of Review Under Rule 166a(i)

We must now decide whether the City's final theory of summary judgment—that under Rule 166a(i) there was no evidence to support a private nuisance claim—was a sufficient ground for summary judgment.

After adequate time for discovery has passed, a party may move for a no-evidence summary judgment if there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The motion must specifically state the elements as to which there is no-evidence; it cannot be general or conclusory. *Weaver v. Highlands Ins. Co.*, 4 S.W.3d 826, 829, n. 2 (Tex.App.—Houston [1st Dist.] 1999, no pet.). The burden then shifts to the non-movant to respond with evidence that raises a genuine issue of material fact on the challenged elements. Tex.R. Civ. P. 166a(i); *Flameout*, 994 S.W.2d at 834. When reviewing the grant of a no-evidence summary judgment, we review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.* The trial court must grant the no-evidence motion for summary judgment unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements. *See* Tex.R. Civ. P. 166a(i) and cmts.; *Flameout*, 994 S.W.2d at 834. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion." *Kindred v. Con/ Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). Conversely, more than a scintilla exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995).

### 1. *Fair Oaks' Evidence of Private Nuisance*

Fair Oaks alleged that the closing of Fair Oaks Road and the resulting material and substantial impairment and denial of access constituted an unlawful invasion of its property rights beyond that arising from merely negligent or improper use; that the City intentionally or negligently invaded its interests; that the City engaged in other conduct, invading its interest, that was culpable because it was abnormal and out of place in its surroundings; and that the invasion of its rights

was inherent in the thing or condition itself.

Fair Oaks presented evidence to support its nuisance claim, including photographs of the barricade showing damage to the property; maps showing the path of the additional traffic that was diverted onto its property because of the barricade; an affidavit from the owner of Fair Oaks, Quinlan; an affidavit from the apartment manager, Rodarte; an affidavit of a resident of the complex, Jessica Garza; correspondence to the City; a copy of the application for installing the barricade; a copy of the hearing conducted by the City to determine whether the street should have been closed; and a copy of a letter to the Mayor from the division manager for Neighborhood Traffic Projects that recommended closure between the two access gates of the apartment complex. Thus, Fair Oaks produced some evidence that the City intended to install the barricade directly in front of its property with the purpose of eliminating traffic.

As evidence that the barricade constituted an invasion of its property rights, Fair Oaks offered undisputed affidavit testimony from the owner of the complex and the manager that traffic increased across the property from those who were circumventing the barricade. The affidavits also indicated that the City placed wooden posts in front of the complex to stop traffic from circumventing the barricade. In deciding where to place the barricade, the City clearly anticipated that traffic would circumvent the barricade by traveling through Fair Oaks' property.

Fair Oaks also produced evidence that installation of the barricade invaded its interest, creating a nuisance, because it was abnormal and out of place in its surroundings. School buses no longer service the apartment complex because the buses have no place to turn. As a result, children must walk to school. The barricade also attracts people, particularly on weekends, who drink alcohol, gamble, and play

10. Civil Practice and Remedies Code

loud music. Quinlan said this makes him and his residents uncomfortable.

A no-evidence summary judgment for the City on Fair Oaks' private nuisance claim was improper because Fair Oaks produced some evidence on each element of its claim for private nuisance.

We sustain Fair Oaks' point of error two.

2. *Lethu's Evidence of Private Nuisance*

■ Lethu alleged the barricade constituted a nuisance because: (1) it substantially interfered with the use and enjoyment of the property and business; (2) it resulted in a depreciation in the market value of the convenience store; (3) it was abnormal and out of place in the surroundings selected; and (4) the City's unreasonable conduct was a proximate cause of its damages. In response to the summary judgment, Lethu argued there were genuine issues of material fact as to whether the City's actions were unreasonable because the City did not consider other less restrictive means. The only evidence Lethu presented the trial court was an affidavit from Le, in which he said his business has suffered substantially as a result of the street closure.

We conclude that Lethu did not respond with sufficient evidence to raise a genuine issue of material fact on its nuisance claim. Therefore, summary judgment for the City on Lethu's nuisance claim was proper.

We overrule Lethu's point of error three.

## V. Declaratory Judgment

■ In Fair Oaks' point of error three, it argues the trial court erred in rendering summary judgment against it on its claim for declaratory relief. Fair Oaks sought an injunction, under Civil Practice and Remedies Code sections 65.011(3) and 65.011(5),[10] ordering the City to remove the street closure and reopen Fair Oaks road.

The City's motion for summary judgment only addressed Fair Oaks' claim for

§ 65.011 states, "A writ of injunction may be

relief under Civil Practice and Remedies Code section 65.015. Fair Oaks abandoned this claim; therefore, summary judgment was improperly granted on Fair Oaks' claim for injunctive relief under Civil Practice and Remedies Code sections 65.011(3) and (5). *See Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex.1992) (explaining that summary judgment cannot be affirmed on a ground not specifically presented in the motion for summary judgment).

We sustain Fair Oaks' point of error three.

## VI. Evidence of Income

In Lethu's point of error two, it argues the trial court erred by admitting evidence at the hearing on whether there was material and substantial impairment of access to its property. Because we have decided that Lethu suffered a material and substantial impairment of access, we need not consider this point.

We affirm in part, reverse in part, and remand to the trial court for further proceedings.

---

granted if ... (3) the applicant is entitled to a writ of injunction under the principles of equity and the statutes of this state relating to injunctions; or ... (5) irreparable injury to real or personal property is threatened, irrespective of any remedy at law."