Opinion issued October 17, 2002








 





In The

Court of Appeals

For The

First District of Texas






NO. 01-00-00621-CV

____________


SHIRLEY JORDAN AND JORDAN V., INC., Appellants


V.


LANDRY'S SEAFOOD RESTAURANT, INC.,

WILLIE G'S GALVESTON, INC.,

LANDRY'S CRAB SHACK, INC., AND

THE CITY OF KEMAH, Appellees






On Appeal from the 122nd District Court

Galveston County, Texas

Trial Court Cause No. 97-CV-0840






OPINION ON REHEARING


 We withdraw our Opinion of July 18, 2002 and issue this one in its stead. 
Appellants' motion for rehearing is denied.

 Shirley Jordan and Jordan V., Inc. (collectively "Jordan") sought temporary
and permanent injunctions against the City of Kemah and Landry's Crab Shack (1) to
stop the restriction of traffic on Second Street, which abuts property they own and
lease to Landry's Crab Shack, Inc. in the City of Kemah. The trial court denied
Jordan's petition for temporary injunction and later granted Landry's and Kemah's
motions for summary judgment, dismissing the case. In five points of error, Jordan
claims the trial court erred in denying the temporary injunction and granting the
summary judgments. We affirm.

I. Background


 Jordan V, a corporation formed to hold and develop real estate owned by the
Jordan family, owned an undeveloped waterfront tract of land on Second Street in
Kemah, Texas. It leased the land to Landry's at $6,000 per month for 20-year term
with three additional five-year options. Under the lease, Landry's has exclusive right
to occupy and control the property.

 Landry's built a restaurant on the property and paid all construction costs. (2) 
Landry's purchased all the land surrounding Jordan's property and all other property
abutting Second Street and began developing the Kemah waterfront into a family
recreation area with restaurants and shops. The lots on the Kemah Boardwalk are
bordered by Second Street on the south and water on the north. Due to the increase
of traffic on Second Street from the proposed development, the City of Kemah
became concerned about the safety of pedestrians. Kemah and Landry's wanted to
limit access to Second Street "in order to ensure safety and enhance the family
environment."

 Kemah conducted public hearings on whether to limit the traffic on Second
Street only to emergency vehicles and pedestrians. On July 24, 1997, Kemah passed
Resolution 97-14 which approved a sale of the entire street to Landry's for $300,000,
but the resolution did not go into effect because Jordan would not consent without
compensation for the alleged loss of its property value. (3) 

 One month later, Kemah passed Resolution 97-16 selling all of Second Street
to Landry's except the portion in front of Jordan's property. The street in front of the
Jordan property that is leased to Landry's would be limited to pedestrian and
emergency traffic for the duration of the lease. The resolution also provided that
Kemah would return the portion of the street abutting the Jordan property to its
original condition at the conclusion of the lease. 

 Jordan claimed the value of its property, which was now landlocked by
property owned by Landry's, whom it considers a "malevolent and dishonest
oppressor," "immediately plummeted." Jordan sued Kemah and Landry's to stop the
enforcement of resolution 97-16. The trial court denied the petition for a temporary
injunction, and there was no activity on the case until it was placed on the dismissal
docket. Landry's and Kemah subsequently filed separate motions for summary
judgment, which the trial court granted. Jordan appeals the trial court's order.

II. Injunctions


 In point of error one, Jordan contends the trial court abused its discretion by
denying his petition for injunctive relief and his motion for summary judgment
seeking to prohibit the restriction of traffic on Second Street during the term of the
lease. 

A. Temporary Injunction 

 On October 22, 1997, the trial court conducted a hearing on the petition for
temporary injunction, and, the next day, denied the petition. An order granting or
denying a temporary injunction is subject to an interlocutory appeal. See Tex. Civ.
Prac. & Rem. Code Ann. § 51.014 (Vernon Supp. 2002). 

 Customarily, appellate review of an interlocutory appeal of an order granting
or denying a temporary injunction, appellate review is strictly limited to determining
whether there has been a clear abuse of discretion by the trial court. See Sonny
Arnold, Inc. v. Sentry Sav. Ass'n, 633 S.W.2d 811, 816 (Tex. 1982). We must not
substitute our judgment for that of the trial court and determine that the trial court
abused its discretion by denying injunctive relief unless the trial court's action was
so arbitrary that it exceeded the bounds of reasonable discretion. Davis v. Huey, 571
S.W.2d 859, 861-62 (Tex. 1978). The merits of the case are not presented for review. 
Id. at 861.

 Jordan did not file an interlocutory appeal of the denial of the temporary
injunction. On March 18, 1999, 17 months after denying the petition, the trial court
gave notice to Jordan that it intended to dismiss its suit for want of prosecution.
Eventually, the trial court granted both Landry's and Kemah's motions for summary
judgment. Landry's and Kemah maintain the granting of their summary judgments
renders any error with respect to the temporary injunction moot.

 If, during the pendency of the appeal of the granting or denying of the
temporary injunction, the trial court renders final judgment, the case on appeal
becomes moot. Isuani v. Manske-Sheffield Radiology Group, P.A., 802 S.W.2d 235,
236 (Tex. 1991). When a case becomes moot on appeal, all previous orders
pertaining to the temporary injunction are set aside by the appellate court and the case
is dismissed. Id. (citing Texas Foundries, Inc. v. Int'l Moulders & Foundry Workers'
Union, 248 S.W.2d 460, 461 (Tex. 1952)). The rendition of a final summary
judgment by the trial court renders an appeal relating to the denial of the temporary
injunction moot. See Lowe v. Farm Credit Bank of Texas, 2 S.W.3d 293, 299-300
(Tex. App.--San Antonio 1999, pet. denied). The temporary injunction has expired
and no longer exists; therefor, the appeal is moot. See Wright v. Wentzel, 749 S.W.2d
228, 234 (Tex App.--Houston [1st Dist.] 1988, no writ). Therefore, the rendition of
the final summary judgment by the trial court rendered Jordan's appeal relating to the
denial of the temporary injunction moot, and we dismiss that portion of the appeal. 

B. Permanent Injunction - Summary Judgment

 The motions for summary judgment filed by Landry's and Kemah raised both
"traditional" and "no-evidence" grounds in their attacks on Jordan's request for a
permanent injunction.

 A party moving for a rule 166a(c) summary judgment has the burden of
showing that no genuine issue of material fact exists and that it is entitled to judgment
as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548 (Tex. 1985). In deciding whether a disputed material fact issue
exists, the reviewing court will take as true all evidence favoring the nonmovant. Id.
at 548-49. Every reasonable inference must be indulged in favor of the nonmovant
and any doubts resolved in the nonmovant's favor. Id.

 Under rule 166a(i), a party is entitled to summary judgment if, after adequate
time for discovery, there is no evidence of one or more essential elements of a claim
or defense on which an adverse party would have the burden of proof at trial. Tex.
R. Civ. P. 166a(i). Thus, a no-evidence summary judgment is similar to a directed
verdict. Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp., 994
S.W.2d 830, 834 (Tex. App.--Houston [1st Dist.] 1999, no pet.). The motion for
summary judgment may not be general, but must state the elements on which there
is no evidence. Tex. R. Civ. P. 166a(i). 

 The trial court must grant the motion unless the nonmovant produces more than
a scintilla of evidence raising a genuine issue of material fact on each of the
challenged elements. See id.; Macias v. Fiesta Mart, Inc., 988 S.W.2d 316, 317 (Tex.
App.--Houston [1st Dist.] 1999, no pet.). 

 In light of Resolution 97-16, Jordan filed this suit seeking a permanent
injunction preventing the city of Kemah and Landry's from limiting traffic on Second
Street during the term of the lease. 

 To be entitled to a permanent injunction, Jordan had to plead and prove: (1) a
wrongful act; (2) imminent harm; (3) irreparable injury; and (4) no adequate remedy
at law. See Morris v. Collins, 881 S.W.2d 138, 140 (Tex. App.--Houston [1st Dist.]
1994, writ denied). Fear or apprehension of the possibility of injury is not sufficient.
Frey v. DeCordova Bend Estates Owners Ass'n, 647 S.W.2d 246, 248 (Tex. 1983);
Mfrs. Hanover Trust Co. v. Kingston Investors Corp., 819 S.W.2d 607, 611 (Tex.
App.--Houston [1st Dist.] 1991, no writ). An injunction will not be issued to prevent
injury that is purely conjectural or speculative. Morris, 881 S.W.2d at 140. The
decision whether to grant injunctive relief is within the sound discretion of the trial
court. Crain v. Unauthorized Practice of Law Comm., 11 S.W.3d 328, 332 (Tex.
App.--Houston [1st Dist.] 1999, pet. denied).

 The first element of a permanent injunction requires the existence of a
wrongful act. Morris, 881 S.W.2d at 140. Jordan contends that, by restricting the
traffic of Second Street, Landry's and Kemah committed a wrongful act in that they
had no power over Jordan's objection as an abutting landowner. 

 Under section 311.002 of the Texas Transportation Code, exclusive control
over city streets belongs to the municipality. (4) However, section 311.008 of the Code
requires consent from all abutting landowners before a municipality may vacate,
abandon, or close a street. (5) Kemah did not "vacate, abandon, or close" Second Street
but only restricted traffic on the street to emergency vehicles and pedestrians based
on public safety concerns. "A city has the general power to regulate the use of its
streets, and is authorized to enact traffic regulations and to impose reasonable
restraints by means of ordinances for the protection of the welfare of the public in the
proper use of its streets." Town of Ascarate v. Villalobos, 223 S.W.2d 945, 949 (Tex.
1949)

 Recognizing that section 311.008 required the consent of the adjoining
landowners, including Jordan, before it vacated, closed, or abandoned the street,
Kemah sold only the portions of Second Street abutting Landry's property. The
section of the street in front of Jordan's property was not sold. The sale to Landry's
was made pursuant to section 272.001 of the Texas Local Government Code, which
allowed Kemah to sell Second Street because Kemah owned the street, and Landry's
purchased it for at least fair market value. See Tex. Loc. Gov't Code Ann. §
272.001 (Vernon Supp. 2002). (6) Kemah was not required to obtain Jordan's consent
before it sold the portion of the street abutting Landry's property. 

 Therefore, we conclude the trial court did not err in determining no genuine
issue of material fact existed and in denying injunctive relief.

 Jordan argues the Transportation Code and the Local Government Code
provisions discussed herein are in conflict because the Transportation Code requires
consent from the abutting landowners while the Local Government Code is silent as
to consent. We disagree. Kemah did not "vacate, abandon, or close" the section of
Second Street abutting the Jordan property. It merely restricted its use to pedestrians
and emergency vehicles during the duration of the lease. After the lease expires, the
street will return to its original unrestricted state. 

 Jordan has failed to prove that the appellees committed a wrongful act which
is a required element of a permanent injunction. We find no error in the trial court's
denial of Jordan's requeste for injunctive relief.

 We overrule Jordan's point of error one.

III. Inverse Condemnation


 In point of error two, Jordan argues the trial court erred in granting Landry's
and Kemah's motions for summary judgment on Jordan's inverse condemnation
claim. To recover on an inverse condemnation claim, a property owner must establish
that (1) the State or other governmental entity intentionally performed certain acts (2)
that resulted in the taking, damage, or destruction of the owner's property (3) for
public use. See Steele v. City of Houston, 603 S.W.2d 786, 788-92 (Tex. 1980); Lethu
Inc. v. City of Houston, 23 S.W.3d 482, 485 (Tex. App.--Houston [1st Dist.] 2000,
pet. denied). 

 Jordan contends, if Landry's and Kemah had the power to restrict traffic on
Second Street such restriction amounted to a "taking" under the Texas Constitution. 
We find no merit to this contention because there has not been a taking. See Texas
Const. art. I, § 17. A decrease in market value alone will not support the conclusion
that a taking has occurred. City of Austin v. Travis County Landfill Co., L.L.C., 73
S.W.3d 234, 241 (Tex. 2002). A property owner must demonstrate that the
interference with the property's use and enjoyment is substantial. Id. at 243. 

 Jordan concedes that the lease gives Landry's "sole and exclusive possession
of and sole and exclusive right to occupy the leased premises." Therefore, Jordan has
no "right to access" that has been materially and substantially affected.

 Jordan also conceded in its first amended petition that there are ways to access
its property by other streets. (7) The overall plan provides ample parking and easy
access to the property, and the restricting of traffic does not materially and
substantially impair Jordan from entering the property. See Olivares, 505 S.W.2d at
530. 

 There is no genuine issue of material fact as to the essential element of a
"taking" in Jordan's cause of action for inverse condemnation, and it was not an
abuse of discretion for the trial court to grant Landry's and Kemah's motions for
summary judgment. (8)

 We overrule Jordan's second point of error.

IV. Local Government Code


 In point of error three, Jordan contends the trial court erred in failing to apply
Transportation Code section 311.008 and by granting summary judgment based on
section 272.001 of the Local Government Code. As previously discussed, Kemah did
not vacate, abandon, or close the street, but only restricted traffic to emergency
vehicles and pedestrians; therefore, 311.008 did not apply. Section 272.001(a)
permitted Kemah to sell part of Second Street to Landry's because Kemah owned the
street and Jordan's consent was unnecessary. See Tex. Loc. Gov't Code Ann. §
272.001 (Vernon Supp. 2002). 

 We overrule Jordan's point of error three.

V. Waiver


 In point of error four, Jordan argues the trial court erred in granting summary
judgment on its claims for breach of contract and "intentional and negligent damage
to property, conspiracy, etc." Jordan does not discuss, argue, or cite any authority
supporting its assertion in its brief that the trial court erred in granting summary
judgment on its common law claims. Therefore, Jordan has waived the point of error.
Tex. R. App. P. 38.1(h). 

 In point of error five, Jordan contends the trial court erred in ruling on the
motions for summary judgment without first allowing sufficient time for discovery.
In its "issues presented for review," Jordan asserts issue number five pertaining to the
time allowed for discovery. However, Jordan does not discuss, argue, or mention this
point of error again in its brief. Therefore, Jordan has waived the argument. Tex. R.
App. P. 38.1(h). 

 We overrule Jordan's points of error four and five.

VI. Conclusion


 We affirm the judgment.


 

 Jackson B. Smith, Jr.

 Justice


Panel consists of Justices Mirabal, Taft, and Smith. (9)


Publish. Tex. R. App. P. 47.



 
1. Jordan also sued Willie G's Galveston, Inc. and Landry's Crab Shack, Inc.,
which are both owned by Landry's. All three Landry's entities are appellees.
2. At the end of the lease, Jordan will own all improvements on the property.
3. Jordan demanded a cash payment from Landry's of $750,000 and an increase
of its monthly rent to $25,000 and increasing to $45,000 over the remaining
term of the lease.
4. Section 311.002 provides, in pertinent part, as follows:


 § 311.002 General Authority of General-Law Municipality


 (a) A general-law municipality has exclusive control over

 the highways, streets, and alleys of the municipality.


 (b) The municipality may:


 . . . .


 (2) open, change, regulate, or improve a street.


 Tex. Transp. Code Ann. § 311.002 (Vernon 1999).
5. Section 311.008 provides as follows:


 § 311.008 Closing of Street or Alley by General-Law Municipality

 

 The governing body of a general-law municipality by
ordinance may vacate, abandon, or close a street or alley of
the municipality if a petition signed by all the owners of
real property abutting the street or alley is submitted to the
governing body.


 Tex. Transp. Code Ann. § 311.008 (Vernon 1999).
6. Section 272.001 is silent with respect to the necessity for consent of
neighboring land owners.
7. "Jordan V cannot have egress from its property to other streets in the area, save
one." During appellate argument, Jordan conceded Bradford Street abuts the
side of its property, and Bradford Street has remained open for vehicular
traffic. 
8. 

 Jordan claims its property value plummeted from $7 million to $700,000 after
the street was closed. Although the Texas Constitution forbids the taking of
private property without adequate compensation, it does not "require
compensation for every decrease in market value attributed to a governmental
activity." Felts v. Harris County, 915 S.W.2d 482, 484 (Tex. 1996); see also
Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,
122 S. Ct. 1465, 1485 (2002); Penn Cent. Transp. Co. v. New York City, 438
U.S. 104, 131, 98 S. Ct. 2646, 2663 (1978) (holding that diminution in fair
market value, alone, does not establish a taking). 
9. The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First
District of Texas at Houston, participating by assignment.