Reversed and Rendered and Opinion filed November 6, 2008









Reversed and
Rendered and Opinion filed
November 6, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00098-CV

____________

 

THE STATE OF TEXAS AND THE CITY OF ROSENBERG, TEXAS, Appellants

 

V.

 

BADRUDDIN BHALESHA AND SAMINA
BHALESHA,
Appellees

 





 

On Appeal from the 400th
District Court

Fort Bend County, Texas

Trial Court Cause No. 02-CV-126959

 





 

O P I N I O N

Appellants, the State of Texas (Athe State@) and the City of
Rosenberg, Texas (Athe City@), bring this
interlocutory appeal challenging the trial court=s order denying
their pleas to the jurisdiction in a suit for inverse condemnation brought by
appellees, Badruddin and Samina Bhalesha (Athe Bhaleshas@).  We
reverse the trial court=s order and render judgment granting
appellants= pleas to the jurisdiction.

 

I.  BACKGROUND

The Bhaleshas own and previously operated the Whitehouse
Supermarket (Athe supermarket@), a grocery store
in Rosenberg, Texas.  The supermarket was situated at the northeast
intersection of Avenue G and former First Street (currently FM 723), with
Avenue G abutting its north side, former First Street abutting its east side,
and its parking lot fronting Avenue G.[1] 
To reach Avenue G, traffic turned from either First Street or what was then FM
723 (now Houston Street), immediately to the west of and parallel to First Street.  Although the supermarket did not have its own parking area on First Street, customers could park in the street=s public parallel
parking spaces on the east side of the supermarket.

On November 8, 2002, the Bhaleshas and Jaina Enterprises,
Inc.[2]
sued the State and the City following construction of an overpass that they
alleged materially and substantially impaired access to the supermarket, and
for which they sought damages for the diminution in the value of their
property.  The overpass, which was constructed to ease traffic flow over
the train tracks running parallel to Avenue G, converted former First Street
into current FM 723 (hereinafter AFM 723@).  Because
there was no longer an at-grade intersection for Avenue G and FM 723, Avenue G
had to be barricaded, thereby cutting Avenue G in half and creating cul-de-sacs
on either side of FM 723.  As a result, traffic traveling west on Avenue G
or on FM 723 had to use US 90A (one block south of and parallel to Avenue G)
and Houston Street (one block west of FM 723 and perpendicular to Avenue G) to
reach the supermarket.  Further, traffic traveling on FM 723 could no
longer park on the east side of the supermarket.  However, ingress and
egress to the supermarket via Avenue G remained unaffected.

 

In their petition, the Bhaleshas and Jaina Enterprises,
Inc. alleged that the construction of the overpass materially and substantially
impaired access to their property and, thus, constitutes a compensable taking
under article I, section 17 of the Texas Constitution.  The State and the
City each filed a plea to the jurisdiction challenging the trial court=s subject matter
jurisdiction to hear the Bhaleshas= claims. Following
a hearing, the trial court granted appellants= pleas as to the
corporate plaintiff, Jaina Enterprises, Inc., but denied the pleas as to the
Bhaleshas.  Appellants now appeal that denial pursuant to Texas Civil
Practice and Remedies Code section 51.014(a)(8).  See Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(8)
(Vernon 2008).

II.  STANDARD OF REVIEW

A plea to the court=s jurisdiction
challenges a trial court=s authority to determine the subject
matter of a controversy.  See State v. Holland, 221 S.W.3d
639, 642 (Tex. 2007); Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547,
554 (Tex. 2000).  Subject matter jurisdiction is essential to a court=s authority to act
and, as such, cannot be waived.  See Cont=l Coffee
Prods.  Co. v. Cazarez, 937 S.W.2d 444, 448 n.2 (Tex. 1996).  The
plaintiff bears the burden to plead facts affirmatively demonstrating subject
matter jurisdiction.  See Holland, 221 S.W.3d at 642; Jansen v.
Fitzpatrick, 14 S.W.3d 426, 431 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).  Upon a finding that the trial court lacks subject
matter jurisdiction, the court must dismiss the suit.  Jansen, 14
S.W.3d at 431.  A plea to the jurisdiction raises a question of law and is
reviewed de novo on appeal.  Westbrook v. Penley, 231 S.W.3d 389,
394 (Tex. 2007); Holland, 221 S.W.3d at 642.  When reviewing a
trial court=s ruling on a plea to the jurisdiction, we construe
the pleadings in favor of the plaintiff.  Tex. Dep=t of Parks &
Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).

 

Governmental immunity from suit defeats a trial court=s subject matter
jurisdiction and, thus, is properly asserted in a plea to the
jurisdiction.  Tex. Dep=t of Transp. v.
Jones, 8 S.W.3d 636, 637 (Tex. 1999).  If a plaintiff fails to plead a
cause of action for which sovereign immunity has been waived, the trial court
has no subject matter jurisdiction.  See id. at 638.  However,
although sovereign immunity generally protects the State and certain
governmental units from lawsuits for monetary damages, it offers no shield
against an inverse condemnation claim brought under article I, section 17 of
the Texas Constitution, which waives immunity for the taking, damaging, or
destruction of property for public use and authorizes compensation for such
destruction.  See id. at 638; Steele v. City of Houston, 603
S.W.2d 786, 791 (Tex. 1980); see also Gen. Servs. Comm=n v. Little-Tex
Insulation Co., 39 S.W.3d 591, 598 (Tex. 2001).

A plea to the jurisdiction can challenge either the
pleadings or the existence of jurisdictional facts.  See Miranda,
133 S.W.3d at 226B27.[3] 
When a plea to the jurisdiction challenges the existence of jurisdictional
facts, we consider relevant evidence submitted by the parties to resolve the
jurisdictional issues raised.  Id. at 227; GAR Assocs.
III, L.P. v. State, 224 S.W.3d 395, 400 (Tex. App.CHouston [1st
Dist.] 2006, no pet.).  If the relevant evidence is undisputed or fails to
raise a fact question on the jurisdictional issue, the trial court rules on the
plea to the jurisdiction as a matter of law.  Miranda, 133 S.W.3d
at 227B28.  If the
evidence creates a fact question regarding the jurisdictional issue, then the
trial court cannot grant the plea to the jurisdiction, and the fact issue will
be resolved by the fact finder.  Id.

III.  ANALYSIS

 

Appellants contend the trial court erred in denying their
pleas to the jurisdiction because construction of the FM 723 overpass does not
materially and substantially impair access to appellees= property. 
Specifically, the State argues that there is no such impairment because the
Bhaleshas retain access to Avenue G, the only street that was accessible from
their parking lot prior to the construction of the FM 723 overpass.  In
two sub-parts, the City contends that (1) requiring traffic to travel a more
circuitous route to gain access to a property from a public road abutting the
property does not constitute a material and substantial impairment as a matter
of law and (2) the creation of a cul-de-sac is not a material and substantial
impairment of access as a matter of law.  Appellees argue that the
substance of appellants= arguments reaches the merits of the case
and, therefore, should not be considered on appeal.  However, they assert
that if we determine review of appellants= arguments is
appropriate, the trial court properly denied appellants= pleas to the
jurisdiction because access to their property has been materially and
substantially impaired.

A.     
Jurisdiction

As a preliminary matter, the Bhaleshas argue that
appellants= central argumentCthat the
construction of FM 723 has not impaired access to their supermarket but merely
requires traffic to travel a circuitous route to access the propertyCis a question on
the merits of the case and, as such, goes beyond the narrow jurisdictional
issue before us.  Thus, they claim, appellants= argument cannot
be properly considered on interlocutory appeal.  This argument is without
merit.

In Texas Department of Parks & Wildlife v. Miranda,
133 S.W.3d 217, 226 (Tex. 2004), the Texas Supreme Court addressed a plea to
the jurisdiction in which undisputed evidence implicated both the subject matter
jurisdiction of the court and the merits of the case.  The court concluded
that where the plea challenges the existence of jurisdictional facts, a
reviewing court must consider relevant evidence submitted by the parties when
necessary to resolve the jurisdictional issues raised, just as the trial court
is required to do.  See id.  Here, because appellants= pleas to the
jurisdictionCwhich include a circuity-of-travel argumentCimplicate the
subject matter jurisdiction of the trial court as well as the merits of the
case, we will consider relevant evidence necessary to resolve the
jurisdictional issues raised.

 

B.      Inverse Condemnation

To recover on an inverse condemnation claim, a property
owner must establish that (1) the State or other governmental entity
intentionally performed certain acts, (2) resulting in the taking, damaging, or
destruction of its property, (3) for public use.  Steele, 603
S.W.2d at 788B92; GAR Assocs., 224 S.W.3d at 401. 
Whether particular facts are enough to constitute a taking is a question of
law.  GAR Assocs., 224 S.W.3d at 401.

An abutting property owner possesses an easement of access
that is a property right.  State v. Heal, 917 S.W.2d 6, 9 (Tex. 1996) (citing DuPuy v. City of Waco, 396 S.W.2d 103, 108 (Tex. 1965)). 
This easement is not limited to a right of access to the system of public
roads.  Id.  A landowner with an easement of access is
entitled to compensation through an inverse condemnation claim whenever the
access is Amaterially and substantially impaired.@  Id. at 10 (citing City of Waco v. Texland Corp., 446 S.W.2d 1, 2 (Tex. 1969)); GAR Assocs., 224 S.W.3d at 401.  This includes compensation for
the diminution in value of the property resulting from a loss of access.  See
Heal, 917 S.W.2d at 10; DuPuy v. City of Waco, 396 S.W.2d 103, 108 (Tex. 1965).  However, damages that result to property by virtue of traffic being
required to travel a more circuitous route to reach the property in question
are not compensable and are not the result of a material and substantial
impairment of access.  State v. Wood Oil Distrib., Inc., 751 S.W.2d
863, 865 (Tex. 1988).

 

Here, the relevant jurisdictional facts are largely
undisputed.  A review of the record reveals that, prior to construction of
the overpass, the supermarket abutted Avenue G and former First Street. 
Its parking lot, located in front of the store, fronted Avenue G.[4]  After
construction, Avenue G was barricaded and cul-de-sacs were created on either
side of the current FM 723, thereafter requiring traffic traveling west on
Avenue G or on FM 723 to travel a more circuitous route (one or two more
blocks) to reach the supermarket by using US 90A and Houston Street.[5]  Also, although
traffic traveling on FM 723 could no longer park in public parking spaces on
the east side of the supermarket, the supermarket=s frontage on
Avenue G, including its parking lot, remained unaffected.

Appellants contend that there has not been a material and
substantial impairment of access to the Bhaleshas= property. 
In support of their position, they assert that (1) the Bhaleshas retain access
to a two-way public street, Avenue G, which is the only access their store had
prior to the construction project at issue, (2) although some of the
supermarket=s patrons may have to take a more circuitous route to
reach the store, such circuity of travel is not a compensable loss, (3) though
traffic no longer passes directly in front of the property, property owners
have no vested interest in traffic flow under Texas law, and (4) the creation
of a cul-de-sac does not entitle a property owner to compensable damages as a
matter of law.  Appellees argue that access to their property has been materially
and substantially impaired because one access point, former First Street, was
closed entirely and the only remaining access point, Avenue G, has been
materially and substantially affected by construction of the cul-de-sacs. 
While appellees recognize that they still have access to Avenue G, they argue
that the remaining access is unreasonable.

 

In support of their contention that the construction
materially and substantially impaired access to their property, appellees rely
primarily on DuPuy v. City of Waco, 396 S.W.2d 103 (Tex. 1965) and Lethu
Inc. v. City of Houston, 23 S.W.3d 482 (Tex. App.CHouston [1st
Dist.] 2000, pet. denied).  DuPuy, the seminal case on impairment
of access, involved the City of Waco=s construction of
a viaduct along its existing South 17th Street.  396 S.W.2d at 104. 
Prior to construction of the viaduct, the property at issue in that case
fronted South 17th Street and sided on an alley connected to Franklin Avenue.  Id. at 104.  After construction, which elevated South 17th Street above the property and left it in a cul-de-sac, DuPuy could only access
his property by traversing underneath the viaduct between concrete support
columns and dead-ending at his property.  Id.  The
Texas Supreme Court concluded that construction of the viaduct had deprived
DuPuy of reasonable access to his property.  Id. at 110.  In
so holding, the court summarized the facts as follows:

Prior to the construction of the viaduct the property of DuPuy fronted
on South 17th Street with full access thereto; now, South 17th Street is
fourteen feet above the property and a concrete support forms a solid barrier
to the immediate right of DuPuy=s building.  As a result, the building is left fronting on a
cul-de-sac under the viaduct.  It is generally held under analogous
circumstances that a property owner left in a cul-de-sac is entitled to
damages.

Id. 

In Lethu, the City of Houston barricaded Fair Oaks Road in front of the plaintiff=s convenience store.  Lethu,
23 S.W.3d at 485.  The barricade closed off Fair Oaks Road to through
traffic between Lawndale and Wayside, a primarily residential area.  Id. at 484.  After installation of the barricade, the convenience store was
situated on a cul-de-sac, accessible only from Wayside, but no longer from Lawndale.  Id. at 485.  The appeals court found a material and
substantial impairment based on several factors.  Id. at 487B88.  First,
the court found that the increased traffic created by the barricade posed a
safety hazard.  Id. at 487.  There was also evidence showing
that emergency vehicles had difficulty in bypassing the barricades.  Id. at 488.  Second, the court found that creation of the cul-de-sac was not a
public improvement but rather a means of denying all access through the
street.  Id. (AThis barricade can in no way be
characterized as a public improvement, as it is nothing more than a permanent
physical obstruction.@)

 

Appellees contend that, just as the plaintiff in DuPuy,
they are now positioned at the end of a cul-de-sac and no longer enjoy a free
flow of traffic, thereby resulting in a material and substantial impairment of
access.  We disagree with appellees that the facts here rise to the level
of impairment present in DuPuy.  While it is true that in both
cases cul-de-sacs were created on the streets to which the properties
previously enjoyed full access, in DuPuy South 17th Street was elevated
fourteen feet above the property, denying access to any public road and leaving
an alleyway as the only remaining access.  See DuPuy, 396 S.W.2d at
104.  Here, however, Avenue G remains at an at-grade level, and the
supermarket retains full ingress and egress to a public road.  Also,
traffic traveling on Avenue G is not required to maneuver between support
columns to reach the supermarket.  Further, while the DuPuy court
noted that A[i]t is generally held under analogous circumstances
that a property owner left in a cul-de-sac is entitled to damages,@ id. at
110, this language does not suggest that the creation of a cul-de-sac entitles
a property owner to damages as matter of law, nor does the case law support
such a proposition.  See, e.g., Archenhold Auto Supply Co. v.
City of Waco, 396 S.W.2d 111, 114 (Tex. 1965) (finding construction of
viaduct resulting in creation of cul-de-sac and closure of one public road,
where access remained to other public road, did not constitute material and
substantial impairment); City of Grapevine v. Grapevine Pool Rd. Joint
Venture, 804 S.W.2d 675, 677B78 (Tex. App.CFort Worth 1991,
no writ) (concluding that creation of cul-de-sac and barricading of public road
did not amount to material and substantial impairment where property retained
unobstructed frontage on other public road).  Morever, the Bhaleshas= contention that
the access to their property has been materially and substantially impaired
because they no longer enjoy a free flow of traffic in front of their
supermarket is without merit.  An abutting property owner does not have a
vested interest in the traffic that passes in front of his property.  See
DuPuy, 396 S.W.2d at 109; see also State v. Schmidt, 867 S.W.2d 769,
774 (Tex. 1993) (concluding that landowners are not entitled to compensation
based on diversion of traffic, reduced visibility from passing traffic, or
circuity of travel).

 

Appellees also argue that the circumstances in Lethu are
similar to those here because in both cases the properties were left abutting a
cul-de-sac and the barricades erected were intended to deny all access through
the street.  However, we find the facts in Lethu differ
significantly from the facts of the instant case.  Here, the record shows,
and appellees do not dispute, that the construction of the FM 723 overpass was
designed to improve the road and ease traffic flow over the train tracks
running parallel to Avenue G.  By contrast, the court in Lethu found
that the barricade could Ain no way be characterized as a public
improvement, as it is nothing more than a permanent physical obstruction@ that is Aintended to deny
all access through the street.@  Lethu, 23 S.W.3d at
488.  Also, while the court in Lethu found that the barricade posed
a safety hazard and that emergency vehicles had difficulty in bypassing the
barricades, there is nothing in the record before us showing a similar concern
with regard to construction of the overpass.

We are mindful that the issue of whether reasonable access
remains is not to be fragmented to focus only on the closed access point
without considering the remaining access points.  See City of San Antonio v. TPLP Office Park Props., 218 S.W.3d 60, 66 (Tex. 2007).  Thus,
while the Bhaleshas= customers were able to park in the public
parking spaces located on former First Street and then walk to the supermarket
prior to construction, we cannot consider only whether that access point used
by those customers will be closed.  See id.  Rather, we must
also consider the existence of remaining access, namely, the unaffected ingress
and egress to the supermarket via Avenue G.  Closing an access point and
merely causing diversion of traffic or circuity of travel does not result in a
compensable taking.  Id. at 66B67.

 

Appellees, however, urge us to focus on the Texas Supreme
Court=s statement in City
of San Antonio that A[w]e have held that access to a business
was not materially and substantially impaired when one access point was closed,
but another access point on a public street remained unaffected.@  Id.
at 66 (emphasis added).  Appellees argue that because their only remaining
access via Avenue G has been severely affected by barricades on either side of
FM 723, there has been a material and substantial impairment.  We are not
persuaded.  In City of San Antonio, the alleged taking involved the
blocking of access from a private business driveway to a city street.  Id. at 61.  The court noted that A[i]f the access to
[the street] is closed, at least six points of egress and ingress along the
I-10 access road will remain at the front of the business park.@  Id.
at 66.  Here, the supermarket=s access point on
Avenue G has not been affected by the barricades on FM 723; rather, it is the
route which traffic must take to reach the supermarket that has been
affected.  As a result of the construction, traffic would be required to
travel an additional one or two blocks to arrive at the supermarket. 
However, as noted above, property owners are not entitled to compensation
arising from a diversion of traffic, reduced visibility from passing traffic,
or circuity of travel.  See id. at 66B67 (finding reduction
in lease rates resulting from traffic being required to travel more circuitous
route to access business park non-compensable); Schmidt, 867 S.W.2d at
774.

We also find the decisions in Archenhold and City
of Grapevine to be instructive.  In Archenhold, the companion case to DuPuy, the
court found that construction of the South 17th Street viaduct did not deprive
the property owner of reasonable access.  See 396 S.W.2d at
114.  Located at the intersection of South 17th Street and Franklin Avenue, the property accessed two public roads and a public alley.  Id. at 113.  After construction of the viaduct, the building accessed only one
public road, Franklin Avenue, and two alleys.  Id.  Adopting
the rule from New York courts, the court concluded that Aone of two public streets may be
closed without compensation to an abutting landowner if the remaining street
furnishes suitable means of access.@  Id. at 114.  The
court reasoned that because Archenhold retained access to one public street,
the property was not materially and substantially impaired.  See id.

 

In City of Grapevine, the plaintiff owned a tract of
property at the intersection of State Highway 26 and Pool Road.  804
S.W.2d at 676.  In an effort to manage traffic flow, the City of Grapevine re-routed a portion of Pool Road and created a cul-de-sac at the end of the
road.  Id. at 676B77.  Plaintiff sued, alleging that
the barricading of Pool Road along with the creation of a cul-de-sac amounted
to a material and substantial impairment of his access.  Id. at
677.  The appeals court noted that A[o]ne of two
public streets may be closed without compensation to abutting landowners if the
remaining street furnishes a suitable means of access to the piece of property.@  Id.
at 678 (citing Archenhold, 396 S.W.2d at 114).  The court
determined that the plaintiff=s property retained unobstructed frontage
along SH 26, thus furnishing a suitable means of access to the property.  Id.  The court concluded that because the property Awas never without
access to a public road,@ the property had not suffered a material
and substantial impairment.  Id.

Similarly, the Bhaleshas retain unobstructed frontage along
Avenue G, thus furnishing a suitable means of access to the supermarket. 
Because they have never been without access to a public road, their access has
not been materially and substantially impaired.  See also Burris v.
Metro. Transit Auth., No. 01-06-00981-CV, ___ S.W.3d ___, 2008 WL 3522249,
at *8 (Tex. App.CHouston [1st Dist.] Aug. 14, 2008, no pet.
h.) (concluding that because appellants= property retained
full access to one public road and egress to other abutting road, closure of
appellants= second entrance to latter road did not amount to
material and substantial impairment).

While we agree with the Bhaleshas that access to their
property has been impaired, impairment alone is insufficient for a compensable
taking.  Instead, appellees must show that the impairment of access is
material and substantial.  See City of Waco v. Texland Corp., 446
S.W.2d 1, 2 (Tex. 1969); see also Archenhold, 396 S.W.2d at 114 (holding
diminishment of means of access is not compensable provided suitable access
remains).  We hold that the evidence and pleadings on file conclusively
establish, as a matter of law, that appellees= access to their
property has not been materially and substantially impaired as a result of the
construction of the FM 723 overpass.  Accordingly, the trial court erred
in denying appellants= pleas to the jurisdiction.

 

IV.  CONCLUSION

We conclude the trial court erred in denying appellants= pleas to the
jurisdiction.  We reverse the trial court=s order and render
judgment granting appellants= pleas to the jurisdiction.

 

 

/s/     
Leslie B. Yates

Justice

 

Judgment rendered and
Opinion filed November 6, 2008.

Panel consists of
Justices Yates, Anderson, and Brown.

 

APPENDIX

 




 
 
 
  
  
 
 




 














[1]  A map of the location is attached as an
appendix.





[2]  The Bhaleshas own Jaina Enterprises, Inc. (AJaina@), a Texas corporation, through which they operated the Whitehouse Supermarket.





[3]  When a plea challenges a plaintiff's pleadings, the
determination turns on whether the pleader has alleged sufficient facts to
demonstrate the court=s subject matter jurisdiction over
the matter.  Miranda, 133 S.W.3d at 226.





[4]  The parties differ in their characterization of what
access, if any, the property had to former First Street.  While the State
acknowledges in its brief that the supermarket had access to former First Street via the public parallel parking spaces used by its customers, it argues that direct
access to former First Street never existed because the property never had
a driveway accessing the street.  The City contends that the supermarket
never had access at all or a driveway connection to former First Street. 
Appellees contend that these statements are factually inaccurate.  A
review of the record reveals that although the supermarket did not have its own
parking lot adjacent to former First Street, customers could use the public
parallel parking spaces on former First Street and then walk to the
supermarket.  Construing the pleadings in favor of the Bhaleshas, as we
must do, we assume that former First Street provided access to the supermarket
via its public parking spaces.  See Miranda, 133 S.W.3d at 226
(noting that appellate courts construe pleadings in favor of plaintiff when
reviewing trial court=s ruling on plea to jurisdiction).





[5]  The Bhaleshas added the language ATAKE THREE RIGHT TURNS@ to their existing signage to notify customers of the new route.