**CITY OF SAN ANTONIO, Petitioner,**

**v.**

**Joe OLIVARES, Sr., et al., Respondents.**

**No. B–3900.**

Supreme Court of Texas.

Feb. 6, 1974.

Rehearing Denied March 13, 1974.

Crawford B. Reeder, City Atty., Jackson C. Hubbard, Asst. City Atty., San Antonio, for petitioner.

Tuck R. Chapin and John M. O'Connell, San Antonio, for respondents.

DENTON, Justice.

The respondents, Joe Olivares, Sr. and Jose F. Olivares, brought this suit against the City of San Antonio, the First National Bank of San Antonio and various other individuals and corporations for damages to their hotel business in San Antonio. The respondents alleged that their loss of business was brought about because access to their hotel was impaired by the passage of an ordinance by the city which closed a portion of a dedicated public alley to the rear of their property. Before a trial on the merits, the suit against the bank was settled for $35,000.00. Subsequently, a directed verdict was entered in favor of the City of San Antonio, and the respondents appealed. The court of civil appeals, with one Justice concurring and one Justice dissenting, reversed and remanded, holding that the respondents' reasonable access to their property had been substantially and materially impaired. 490 S.W.2d 922. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

On December 1, 1962, the respondents leased the Travis Plaza Hotel in San Antonio from the Birdie L. Nix Trust for a period of ten years. As depicted by the accompanying diagram, Appendix A, attached hereto, the Travis Plaza Hotel was located upon Lots A–16 and A–17 of a plat filed of record with the City of San Antonio. Another hotel, the Bluebonnet, is located to the north of the Travis Plaza Hotel upon Lots 15 and 16. Lots 18 and 19, as well as Lots 1, 2 and 3, were parking lots. Lots 4 through 6B were occupied by various buildings. The Travis Plaza Hotel was bounded by Breneman Street on the north, North St. Mary's Street on the west and East Travis Street on the south. East Pecan Street bounds the Bluebonnet Hotel on the north. The arrows drawn on the accompanying diagram denote the direction of one-way traffic on these streets.

Breneman Street, an alley to the rear of the Travis Plaza Hotel, ran all the way from a "T" intersection bordering Lot 19 on the east, and intersecting with East Pecan Street on the north and East Travis Street on the south to the St. Mary's street intersection to the west. A private alley owned by the respondents' lessor was located to the immediate rear of the Travis Plaza Hotel. The cross-hatched area adjacent to this private alley was an unfinished motor ramp being constructed by the respondents. The private alley and motor ramp were at ground level under the second floor of the Travis Plaza Hotel.

For some time prior to April 10, 1969, the First National Bank of San Antonio had begun plans for construction of a multi-story bank and office building on Lots 1 through 6B. Also planned was a multi-story parking garage on Lots 18 and 19. Pursuant to these plans, the bank acquired title to Lots 1 through 6B and Lots 18 and 19 from the private owners thereof. To build the huge parking facility, the bank also needed to close a portion of Breneman Street, for many years a dedicated public alleyway in the City of San Antonio. Accordingly, the bank approached the appropriate departments of the city and proposed that the subject portion of Breneman Street be vacated and closed as a public way. There were many meetings concerning this matter and at least one or two formal hearings before the City Planning Commission and City Council. The respondents attended these hearings and protested the proposed closing. Other abutting property owners, however, ultimately agreed to the closing of Breneman Street.

A plan was finally worked out by the City Council whereby the city would, by ordinance, close and vacate Breneman Street to the east of the Travis Plaza Hotel as shown by the attached map. In consideration of the closing of Breneman Street, the bank agreed to dedicate to the city and pave as a public alley the irregular-shaped area depicted on the accompanying diagram, running south from East Pecan Street to Breneman Street and intersecting said street at the northeast corner of the respondents' property. The bank, in addition to dedicating and paving this new alleyway, agreed to pay the city the sum of $16,800.00 for that portion of Breneman Street which the city in turn agreed to quitclaim to the bank. The following ordinance passed by the City Council on April 10, 1969, effectuated the above described transactions:

SECTION 1. That portions of the alleyways located in New City Block 408, more particularly described by field notes contained in the Quitclaim Deeds attached hereto, are hereby closed and abandoned as public ways of the City of San Antonio.

SECTION 2. The City Manager is hereby authorized to execute Quitclaim Deeds to said parcels of land to the abutting owners in consideration of $16,860 plus the dedication of a new alleyway to be located in New City Block 408.

SECTION 3. That the above described Quitclaim Deeds are not to be delivered to Grantees until such time as proper re-platting, containing the new alleyway dedication, has been accepted and approved by the City Planning Commission.

Thereafter, the bank barricaded the ordinance-closed portion of Breneman Street, and the multi-story parking garage was ultimately built which permanently and physically closed off the ordinance-closed portion of the alley.

The respondents contend that the city had no legal right to close Breneman Street which had been a public street and way since the 1800's as shown by the Suerte map in evidence; and that such closing materially and substantially impaired their right of access to their hotel property

thereby resulting in damages to their hotel business.

The respondents take the position that the ordinance-closed portion of Breneman Street was closed exclusively for the private benefit of the bank, calling our attention to the fact that the ordinance was passed at the instance of the bank and that the City Council was no doubt motivated by a desire to assist the bank in developing a multi-million dollar project in an area otherwise occupied by parking lots   Vernon's Ann.Civ.Stat., Article 1175, § 18, empowers the city to vacate, abandon and close its streets and alleys for a public purpose.   Hartwell Iron Works v. Missouri-Kansas-Texas R. Co., 56 S.W. 2d 922 (Tex.Civ.App.—1933, no writ).   As stated in McQuillin, Municipal Corporations, Vol. 11, § 30.186a, page 123, the public welfare may be promoted by placing street lands in private control. Hence, merely because a vacated street or alley is placed in private control is not alone sufficient ground for invalidating a closing ordinance.   And, the fact that the vacation was at the instigation of abutting owners to enable them to use the land vacated in their business, without a further showing of abuse of official discretion, will not vitiate the proceedings.   Accordingly, a municipality may vacate and close a street or alley on the petition of an abutter for his benefit where the vacation is also for the benefit of the municipality at large.

Breneman Street as it originally existed was a fifteen foot alleyway.   It was not wide enough for automobiles to pass.   It was used largely by delivery trucks serving the commercial establishments backing on the street.   The new dedicated alley was thirty feet wide at the south end.   The Director of Traffic and Transportation for the City of San Antonio reported to the Planning Commission that the proposal of the bank for closing the designated portion of Breneman Street,

and the dedication of the new and wider alleyway from Pecan Street south to Breneman Street, would provide for much better access and would be a marked improvement over the existing conditions prior to the closure ordinance.   In addition, the bank gave the Nix Estate, owner's of the Travis Plaza Hotel, a six foot easement in conjunction with adjoining property to provide for a larger turning radius for vehicles in the rear of the hotel.   A five foot "cut-off" was also deeded by the bank to the Nix Estate, which provided improved access for vehicular ingress and egress between the hotel and the north-south alley out to Pecan Street.   The new dedicated alley is twice as wide in its southern half and provides more room for motor vehicles, including fire and garbage trucks, to negotiate the turn into and out of the unclosed portion of Breneman Street.   The closing ordinance, conditioned upon the new dedicated alleyway together with the easements granted by the bank, was for the benefit of the municipality at large.

Although respondents further contend the closing of Breneman Street materially and substantially impaired their right of access, the real claim is that when the city closed the south leg of Breneman Street to Travis Street, they deprived the respondents, their customers and the public generally of access to their hotel via Travis Street.   This complaint concerns circuity of travel, not access.   Diversion of traffic resulting in necessity of using circuitous routes is not compensable.   City of Beaumont v. Marks, 443 S.W.2d 253 (Tex. 1969) ; Pennysavers Oil Co. v. State, 334 S.W.2d 546 (Tex.Civ.App.—1960, writ ref'd).

We do, however, consider the respondents' pleaded contention that their right of access was materially and substantially damaged by the closing of Breneman Street.   It is undisputed that respondents leased the hotel premises in question with

reference to the Suerte map showing Breneman Street to have been a public way since the 1800's. This Court has consistently held that the conveyance of land by reference to a map or plat, upon which lots and streets are laid out, results in the purchaser or one holding under him, acquiring by implication a private easement in the alleys or streets shown on the plat. Dykes v. City of Houston, 406 S.W.2d 176 (Tex.1966); City of Houston v. Fox, 444 S.W.2d 591 (Tex.1969). This private easement survives the vacation or abandonment of the street by the city. Dallas Cotton Mills v. Industrial Co., 296 S.W. 503 (Tex.Com.App.—1927); Blair v. Astin, 10 S.W.2d 1054 (Tex.Civ.App.—1928, writ ref'd).

■ Texas courts have generally recognized that abutting property owners have private rights in existing streets and alleys in addition to their rights in common with the general public. This right is in effect a private right of ingress and egress. It is a right of passageway to and from the property. City of Waco v. Texland Corporation, 446 S.W.2d 1 (Tex.1969); City of Houston v. Fox, *supra*; State v. Meyer, 403 S.W.2d 366 (Tex.1966); Powell v. Houston & T. C. R. R. Co., 104 Tex. 219, 135 S.W. 1153 (1911).

In City of Waco v. Texland Corporation, *supra,* this Court held that "property has been damaged for a public use within the meaning of the Constitution when access is materially and substantially impaired even though there has not been a deprivation of all reasonable access." This standard of compensable damage was upheld in City of Houston v. Fox, *supra*, although the Court there held that there had not been a material and substantial impairment of the plaintiff's right of access.

This Court in Lee v. City of Stratford, 125 Tex. 179, 81 S.W.2d 1003, 1004 (1935), approved the following doctrine of wide acceptance as stated in McQuillin, Municipal Corporations, Vol. 4, § 1527, page 279:

On the other hand, if the street directly in front of one's property is not vacated but the portion vacated is in another block, so that he may use an intersecting cross street, although perhaps it is not quite so short a way nor as convenient, it is almost universally held that he does not suffer such a special injury as entitles him to damages. And this is so notwithstanding the new route is less convenient or the diversion of traffic depreciates the value of his property. The fact that the lot owner may be inconvenienced or that he may have to go a more roundabout way to reach certain points, it is generally held, does not bring him an injury different in kind from the general public, but in degree only. "If means of ingress and egress are not cut off or lessened in the block of the abutting owner, but only rendered less convenient because of being less direct to other points in the city, and made so by the vacation of the street in another block, such consequence is damnum absque injuria."

■ The question of whether a landowner's right of access has been materially and substantially impaired is a question of law. City of Waco v. Texland Corporation, *supra*. We hold that, as a matter of law, the respondents' access to their hotel property via Breneman Street was not materially and substantially impaired. The evidence before us conclusively establishes that after the construction of the bank's parking garage on that portion of Breneman Street, which had been closed, the respondents still had vehicular access to their property via the unclosed portion of Breneman Street by existing south off East Pecan Street through the newly dedicated alley. Under this state of facts, there is nothing to indicate the presence of any substantial and material obstacle to vehicular access to respondents' property via Breneman Street.

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.