Opinion issued November 2, 2006 


















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-05-00886-CV
__________
 
GAR ASSOCIATES III, L.P., Appellant
 
V.
 
STATE OF TEXAS, ACTING BY AND THROUGH THE TEXAS
DEPARTMENT OF TRANSPORTATION, Appellee
 

 
 
On Appeal from County Civil Court of Law Number Four
Harris County, Texas
Trial Court Cause No. 840130 
 

 
 
O P I N I O N
          Appellant, GAR Associates III, L.P. (“GAR”), brings this accelerated
interlocutory appeal,


 challenging the trial court’s order granting the plea to the
jurisdiction of appellee, the State of Texas, acting by and through the Texas
Department of Transportation (“TXDOT”). In four issues, GAR contends that the
trial court erred in granting TXDOT’s plea because it had subject matter jurisdiction
over its inverse condemnation and related injunctive relief claims; the pleadings and
evidence on file did not affirmatively negate the trial court’s subject matter
jurisdiction; GAR “presented sufficient pleadings and evidence conclusively
showing, or at least raising issues of material disputed fact, that the trial court had
jurisdiction over its inverse condemnation claim”; and “the trial court had jurisdiction
over other claims against governmental entities in addition to the inverse
condemnation claim against TXDOT.” 
          We affirm the order of the trial court. 
Factual and Procedural Background
          In its original petition and application for injunctive relief, GAR alleges that
it is “the owner of a number of units located in the condominium complex commonly
known as 2016 Main,” a twenty-six story building adjacent to a section of Interstate
Highway 45 referred to as the “Pierce Elevated.” GAR asserts that “[f]or a number
of years,” GAR and its tenants, guests, contractors, and vendors used an “alley”
between 2016 Main and the Pierce Elevated to access the restaurant space in 2016
Main and park “in the public parking area” below the Pierce Elevated (the “parking
area”). However, in 2004, the Metropolitan Transit Authority of Harris County
(“METRO”) began preventing GAR’s and the public’s access to the alley and the use
of the parking area by first erecting steel posts in one of the entrances to the alley and
then fencing in the alley and the parking area. 
          GAR also alleges that on January 24, 2005, it leased one of the units, the first-floor restaurant space, to Sammy’s Place Midtown, Ltd. (“Sammy’s”). GAR
complains that its lease with Sammy’s, which it attached to its petition, is contingent
on the availability of and access to the alley and parking area. The lease provides
Sammy’s a time-limited right of termination if the parking area becomes unavailable. 
GAR also complains that the entrance to the restaurant space from the alley is “an
indispensable part of the [r]estaurant’s activities” and that the restriction of access to
this entrance interferes with GAR’s and its tenant’s right to use and enjoy the
restaurant and substantially diminishes the value of the restaurant space.
          GAR also attached to its petition a copy of a City of Houston ordinance passed
in June 1968, titled, “An Ordinance Authorizing the Mayor to Execute . . . a Master
Agreement for Construction, Maintenance and Operation of Off-Street Parking and
Other Appropriate Uses on State Highway Department Rights-of-Way Within the
City of Houston.” Pursuant to this ordinance, the City and the State entered into a
“Master Agreement,” which provides, 
          [T]he City has requested the State to permit the construction,
maintenance, and operation of public off street parking facilities and to
permit other appropriate uses within such city, under all existing and
future freeways where long elevated sections exist or will exist[.]
 
          . . . [T]he State has indicated its willingness to approve the
establishment of such parking facilities and other uses . . . conditioned
that the City will enter into agreements with the State for the purpose of
determining the respective responsibilities of the City and the State with
reference thereto, and conditioned that such parking and other uses are
in the public interest and will not damage the highway facilities, impair
safety, impede maintenance or in any way restrict the operation of the
highway facility . . . 
 
          . . . [T]his agreement is intended to provide that the space beneath
the structure may be used for other appropriate purposes in addition to
parking and each proposed project shall be approved by supplemental
agreement executed between the City of Houston and the State Highway
Department . . . .
 
GAR notes that the Master Agreement requires the City to pick up trash, mow, and
otherwise keep the facility in a clean and sanitary manner and to take further steps to
“eliminate the possible creation of a nuisance or hazard to the public.”
          GAR further alleges that TXDOT, along with its co-defendants METRO and
the City, intentionally blocked or restricted access to the restaurant by fencing in the
alley and parking area and that TXDOT’s conduct resulted in a taking in violation of
article 1, section 17 of the Texas Constitution.


 GAR also asks for injunctive relief
under sections 65.011 and 65.015 of the Texas Civil Practice and Remedies Code.



          In its plea to the jurisdiction, TXDOT contends that GAR’s suit is barred by
sovereign immunity. TXDOT asserts that GAR does not own a real property interest
in the alley and parking area and that TXDOT owns the property, has not conveyed
an interest to GAR, and has not abandoned the property. TXDOT also asserts that
GAR has “no express or implied, public or private easement over and across” the
property.  
          At the trial court’s hearing on TXDOT’s plea, Patrick Tollett, a representative
for GAR’s managing agent, testified that construction on 2016 Main began in 1963
and was completed in 1964, GAR owned a number of units in 2016 Main, one of
2016 Main’s property lines directly abuts the alley and is adjacent to the Pierce
Elevated, and 2016 Main is bounded on its other three sides by Main, Gray, and
Travis Streets. 2016 Main has commercial units on the ground floor, including a
restaurant space currently leased by GAR to Sammy’s. Tollett began working at
GAR in 1982, and since 1982 the alley had been used by the public to travel between
Travis and Main Streets and to access the parking area. For the last twenty or thirty 
years, Tollett had observed the public driving back and forth through the alley, which
has sidewalks on both sides and is wide enough to permit traffic to travel
simultaneously in opposite directions. Additionally, the alley provided the only
access to the parking area. Tollett noted that the restaurant space in 2016 Main has
a set of double doors that open directly from the restaurant’s kitchen area into the
alley and that GAR, GAR’s tenants, and GAR’s vendors use the alley to make
deliveries and remove trash. Tollett explained that Metro blocked access to the alley
and parking area when it installed steel posts in the alley’s Main Street entrance and
later installed fencing around the alley and parking area.
          John Deal, a partner in Sammy’s, testified that at the time he negotiated the
lease with GAR, he was not aware that METRO planned to block access to the alley
and there were no signs METRO intended to block the parking area. Deal explained
that the kitchen is not functional without the ability to receive deliveries through the
alley doors and, as a result, Sammy’s is unable to open its restaurant.
          In addition to these witnesses, GAR presented documentary evidence,
including the deeds for the property on which the alley and the parking area are
located. These deeds reflect that in 1959, prior to the commencement of 2016 Main’s
construction, the State purchased this property for the construction of “Controlled
Access Highways.” GAR also introduced a copy of an ordinance, passed by the City
in 1966, authorizing an agreement between the City, State, and United States
Department of Commerce, Bureau of Public Roads, under which the City was
authorized to construct, maintain, and operate an off-street public parking facility
underneath the Pierce Elevated. The agreement, which was entered into by the parties
pursuant to this ordinance, provides,
          It is to be understood that the State by execution of this agreement
with the City for the use of this area as a parking facility does not impair
or relinquish the State’s right to use such land for right-of-way purposes
when it is required for the construction or reconstruction of the traffic
facility for which it was acquired, nor shall use of the land as a parking
facility under such agreement ever be construed as abandonment by the
State of such land acquired for highway purposes.
 
The agreement also provides the State with a right to terminate the use of the area as
a parking facility.
          The defendants then introduced into evidence a copy of a 2005 lease agreement
executed between the State, acting through TXDOT, and METRO, pursuant to
section 202.052 of the Texas Transportation Code.


 In the agreement, the State leased
a two-block area underneath the Pierce Elevated, including the property on which the
alley and parking area are located, to METRO “solely for the purpose of . . . surface
parking lots.” It also authorized METRO to “construct improvements consistent with
the operation and maintenance of a parking facility,” including the installation of
upgraded lighting, a seven-foot wrought-iron fence, and vehicular and pedestrian
security gates.
          After the hearing, GAR filed an amended petition, repeating many of the same
factual allegations, and emphasizing that Sammy’s entered its lease with GAR with
the expectation of unrestricted access to the alley and that the restaurant is not
operational without access to the alley to receive deliveries from vendors.


 Plea to the Jurisdiction
          A plaintiff who sues the State must establish the State’s consent to sue. Tex.
Dep’t of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). The State may assert
sovereign immunity from suit in a plea to the jurisdiction. Id. A plea to the
jurisdiction seeks dismissal of a case for lack of subject-matter jurisdiction. Id. at
637. When reviewing a trial court’s ruling on a plea to the jurisdiction, we construe
the pleadings in favor of the plaintiff. See Tex. Dep’t of Parks & Wildlife v. Miranda,
133 S.W.3d 217, 226 (Tex. 2004). Whether a pleader has alleged facts that
affirmatively demonstrate a trial court’s subject matter jurisdiction is a question of
law that we review de novo. Id. Likewise, whether undisputed evidence of
jurisdictional facts establishes a trial court’s jurisdiction is also a question of law. Id. 
If a plea to the jurisdiction challenges the existence of jurisdictional facts, we
consider relevant evidence submitted by the parties when necessary to resolve the
jurisdictional issues raised. Id. at 227. If the relevant evidence is undisputed or fails
to raise a fact question on the jurisdictional issue, the trial court rules on the plea to
the jurisdiction as a matter of law. Id. at 228. If the evidence creates a fact question
regarding the jurisdictional issue, then the trial court cannot grant the plea to the
jurisdiction. Id. at 227–28.
Inverse Condemnation and Injunctive Relief
          In its first three issues, which GAR discusses together, GAR argues that the
trial court erred in granting TXDOT’s plea to the jurisdiction because the trial court
had subject matter jurisdiction over GAR’s “inverse condemnation and related
injunctive relief claims,” the pleadings and evidence on file did not affirmatively
negate the trial court’s subject matter jurisdiction, and GAR “presented sufficient
pleadings and evidence conclusively showing, or at least raising issues of material
disputed fact, that the trial court had jurisdiction over its inverse condemnation claim
. . . based upon GAR’s property right in an easement of access to the subject street or
alley as an abutting property owner.” 
          Although sovereign immunity generally protects the State from lawsuits for
monetary damages, it offers no shield against an inverse condemnation claim brought
under article I, section 17 of the Texas Constitution, which waives immunity for the
taking, damaging or destruction of property for public use and authorizes
compensation for such destruction. Steele v. City of Houston, 603 S.W.2d 786, 791
(Tex. 1980); see also Gen. Servs. Com’n v. Little-Tex Insulation Co., 39 S.W.3d 591,
594 (Tex. 2001). 
          Article I, section 17 of the Texas Constitution provides,
          No person’s property shall be taken, damaged or destroyed for or
applied to public use without adequate compensation being made, unless
by the consent of such person; and, when taken, except for the use of the
State, such compensation shall be first made, or secured by a deposit of
money.
 
Tex. Const. art. I, § 17. 
          To recover on an inverse condemnation claim, a property owner must establish
that (1) the State or other governmental entity intentionally performed certain acts,
(2) that resulted in the taking, damaging, or destruction of its property, (3) for public
use. Steele, 603 S.W.2d at 788–92 (Tex. 1980); Lethu, Inc. v. City of Houston, 23
S.W.3d 482, 485 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). Whether
particular facts are enough to constitute a taking is a question of law. Little-Tex, 39
S.W.3d at 598. 
          A direct physical invasion of property is not required under article I, section
17 to entitle an owner to compensation for a taking. DuPuy v. City of Waco, 396
S.W.2d 103, 108 (Tex. 1965). “[A]n abutting property owner possesses an easement
of access which is a property right; . . . this easement is not limited to a right of access
to the system of public roads; and . . . diminishment in the value of property resulting
from a loss of access constitutes damage [compensable under article I, section 17 of
the Texas Constitution].” State v. Heal, 917 S.W.2d 6, 9 (Tex. 1996) (citing DuPuy,
396 S.W.2d at 108); see also Lethu, Inc., 23 S.W.3d at 485. A landowner with an
easement of access is entitled to compensation through an inverse condemnation
claim whenever the access is “materially and substantially impaired.” Heal, 917
S.W.2d at 10 (citing City of Waco v. Texland Corp., 446 S.W.2d 1, 2 (Tex. 1969));
see also DuPuy, 396 S.W.2d at 110 (stating that construction of viaduct, which
deprived landowner of “reasonable access,” entitled him to compensation under the
constitution). 
          Here, the relevant jurisdictional facts are largely undisputed. The parties’
central dispute concerns whether GAR has an actionable vested property interest, i.e.,
an easement of access through the alley and over the State’s property. See City of
Houston v. Northwood Mun. Util. Dist. No. 1, 73 S.W.3d 304, 311 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied) (“[A] plaintiff asserting a claim under
article I, section 17 must show that it has a ‘vested’ property interest.”); Carson v.
State, 117 S.W.3d 63, 68 (Tex. App.—Austin 2003, no pet.) (recognizing that
plaintiff must have “vested legal right” of access and not merely historical permissive
use to have actionable inverse condemnation claim). GAR asserts that it “has a
vested property right in the public alley.” TXDOT asserts that GAR does not possess
an easement of access and that the “driveway” was not a “public road or alley.”
TXDOT further asserts that “there was no dedication of the State’s property as a
public road” and that GAR’s “temporary permissive use of the property” did not
“result in a dedication.”  
          “[A]butting property owners have private rights in existing streets and alleys
in addition to their rights in common with the general public.” City of San Antonio
v. Olivares, 505 S.W.2d 526, 530 (Tex. 1974); see also State v. Meyer, 403 S.W.2d
366, 370 (Tex. 1966) (recognizing that “abutting property owners have certain private
rights in existing streets and highways in addition to their right in common with the
general public to use them”). “This right is in effect a private right of ingress and
egress” and “[i]s a right of passageway to and from the property.” Olivares, 505
S.W.2d at 530. This private easement survives the vacation or abandonment of the
street. Id.
          In Olivares, the Texas Supreme Court stated that “conveyance of land by
reference to a map or plat, upon which lots and streets are laid out, results in the
purchaser or one holding under him, acquiring by implication a private easement in
the alleys or streets shown on the plat.” Id.; see also Town of Palm Valley v. Johnson,
17 S.W.3d 281, 288 (Tex. App.—Corpus Christi 2000, pet. denied) (“A private
easement in a street may be acquired either as a purchaser in a subdivision with
reference to a recorded plat or map . . . or as an abutting property owner.”). A right
of an easement of access has been explained as follows:
          It is well settled that if one owning land, exhibit a map of it, on
which a street is defined, though not as yet opened, and building lots be
sold by him, with reference to a front or rear on that street, this operates
as an immediate dedication of the street; and the purchasers of lots have
a right to have the street thrown open forever. The individual
purchasers thereunder acquire an easement in the land designated as an
alley or street, and such alley or street becomes charged with the
servitude incident to such easement. Such purchasers have, by virtue of
the easement thus acquired, the right to have such street or alley kept
open, whether the public has or not accepted the dedication by some acts
of user. The right acquired by the purchaser is a private easement over
those areas set aside and designated as public ways, and this right
attaches immediately upon his purchase of the property. Therefore,
when the plaintiffs purchased their lots with reference to the subdivision
plat, they immediately acquired private rights of easement over the
streets shown on such plat as abutting their land whether or not such
streets were ever accepted or opened by the City, as representative of the
public.
 
Dykes v. City of Houston, 406 S.W.2d 176, 181 (Tex. 1966) (internal citations
omitted).       
          The evidence and pleadings on file in this case establish that the State acquired
the property at issue in 1959 for the purpose of constructing a controlled access
highway, the construction of 2016 Main was commenced in 1963 and completed in
1964, and 2016 Main was constructed so that one of its property lines directly abuts
the State’s property. The evidence also establishes that in 1966 the State entered into
an agreement with the City permitting the construction of a parking area on the
State’s land under the Pierce Elevated, this agreement provided that the State was not
abandoning this land and had a right to terminate the agreement, and in 2005 the State
entered into a lease authorizing METRO to use the land for parking and to construct
improvements, including the installation of a fence and security gates. 
          When the State acquired the land on which the alley and parking area are
located, it did so for the express purpose of constructing a controlled access highway,
which it did when it constructed the Pierce Elevated. Accordingly, it is presumed that
the State, which acquired the property in 1959, unrestricted by any easements or
competing property interests, would exercise its rights and use the property to the
fullest extent, including the right to exclude others from using the property. See City
of Corpus Christi v. Polasek, 404 S.W.2d 826, 831–32 (Tex. App.—Corpus Christi
1966, no writ). This presumption is based on the fact that “a condemning authority
cannot condemn property and pay less than the full value of it under the guise that its
rights will not be exercised to the fullest extent and that the former owner will be
permitted to make some use of it.” Id. at 832. 
          As the unrestricted property owner, the State then acted within its rights to
enter into the lease agreement with the City permitting it to use the space below and
bordering the Pierce Elevated as a public parking area. But the State, in entering into
this agreement, expressly stated that it was not abandoning its property interest. 
Although the public, including GAR, appears to have enjoyed the use of the parking
area and alley constructed pursuant to the City’s lease, the State has now leased its
property to METRO for METRO’s exclusive use. Id. The State, acting as the
unrestricted property owner, subsequently acted within its rights when it granted
METRO the exclusive use of its property, exercising the right of termination it
reserved in its agreement with the City and terminating what can only be described
as GAR’s and the public’s prior “temporary permissive use.” See id.; see also
Carson, 117 S.W.3d at 68 (stating that “[a] party cannot gain a legal right to property
against the State by adverse possession”). Here, we are not presented with the
situation where “an owner’s former right of access to a public facility, appurtenant
to his remainder, is being retained in his favor.” Polasek, 404 S.W.2d at 832. 
          Moreover, this case is distinguishable from those cited by GAR in support of
its arguments. For example, in City of Houston v. Hughes, the plaintiffs brought suit
against the City of Houston seeking to recover title to a strip of land that the plaintiffs
conceded had been used as a road to access lots previously sold by the plaintiffs to
a number of other parties. 284 S.W.2d 249, 252 (Tex. Civ. App.—Austin 1955, writ
ref’d n.r.e.). In concluding that the road was public, the court stated, 
The principle upon which the binding and irrevocable nature of a
dedication rests, appears to be this: that when once a way, street, etc.,
has been laid out on the soil, or on a map, and property has been
purchased in reference thereto, the resumption of the street, or way, by
the proprietor, would be an act of bad faith, and a fraud upon any
interests acquired upon the faith of its being left open. Hence, it
operates as an estoppel in pais of the owner, from exclusive use of the
property, or indeed any use, which is inconsistent with the public use,
to which it has been dedicated.
 
Id. (citing Oswald v. Grenet, 22 Tex. 94, 102 (Tex. 1858)).



          In Quanah Acme & P. Ry. Co. v. Swearingen, a landowner whose property
abutted an alley brought suit against a railroad that installed a rail platform across the
alley, impairing the landowner’s access to his property. 4 S.W.2d 136, 138 (Tex. Civ.
App.—Amarillo 1927, writ ref’d). Although the court stated that “[a] way over land
set apart for public travel in a town or city is a street, no matter what it may be
called,” and that “[a] narrow way, less in size than a street, is generally called an
alley; and, if the alley is a public one, it is a highway, and in general, is governed by
the rules applicable to streets,” it was undisputed that “the alley had been dedicated
to public use.” Id. at 138. 
          In contrast, although the alley in this case “has sidewalks, double lanes, and
continues on parallel to the Pierce Elevated for at least several blocks” and although
there were parking meters in the parking area at one time, the State did not dedicate
its land or the alley and parking area located under and around the Pierce Elevated to
become a public alley in the sense that it would entitle abutting owners to claim a
compensable easement of access through the alley. When it entered into the lease
with the City and permitted the construction of the alley and parking area, the State
did not dedicate its land to serve as a public road or alley and forfeit its unrestricted
right to its property. In fact, the evidence is clear regarding the purposes for which
the State acquired the land—the erection of a controlled access highway. The
evidence is also clear that TXDOT never intended to dedicate the property for use as
a public street. The lease established that, by entering into the agreement, the State
was not abandoning its interest and that the State had a right to terminate the
agreement—a right it exercised when it entered into the new lease with METRO.


 
We hold that the evidence and pleadings on file conclusively establish, as a matter of
law, that GAR does not have a vested legal right to access the alley and parking area. 
Accordingly, we further hold that the trial court did not have subject matter
jurisdiction over GAR’s “inverse condemnation and related injunctive relief claims”
and that the trial court did not err in granting TXDOT’s plea to the jurisdiction.           We overrule GAR’s first, second, and third issues.
Claims Against Other Governmental Entities
          In its fourth issue, GAR argues that the trial court erred in granting the plea
because “the trial court had jurisdiction over other claims against governmental
entities in addition to the inverse condemnation claim against [the State].” In support
of its fourth issue, GAR cites, inter alia, Harris County Flood Control Dist. v. PG &
E Tex. Pipeline, L.P., 35 S.W.3d 772, 773 (Tex. App.—Houston [1st Dist.] 2000, pet.
dism’d w.o.j.), disavowed on other grounds by City of Houston v. Northwood Mun.
Util. Dist. No. 1, 74 S.W.3d 183 (Tex. App.—Houston [1st Dist.] 2002, no pet.). 
          However, the Texas Supreme Court has recently held that “it is proper for a
trial court to dismiss claims over which it does not have subject matter jurisdiction
but retain claims in the same case over which it has jurisdiction. Thomas v. Long, No.
03-0204, 2006 WL 1043429, at *3 (Tex. April 21, 2006). The court further stated
that “[a] trial court is not required to deny an otherwise meritorious plea to the
jurisdiction or a motion for summary judgment based on a jurisdictional challenge
concerning some claims because the trial court has jurisdiction over other claims.” 
Id. The court specifically disapproved of PG & E Tex. Pipeline, L.P., 35 S.W.3d at
773, to the extent it held otherwise. Id. Accordingly, we hold that the trial court did
not err in granting the plea on the ground that it had jurisdiction over GAR’s other
claims against other governmental entities. 
          We overrule GAR’s fourth issue.
          Conclusion
          We affirm the order of the trial court.
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Higley.