

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00523-CV

**OHIO DEVELOPMENT, LLC.,**
Appellant

v.

**TAPATIO SPRINGS HOMEOWNERS ASSOCIATION**,
Appellee

From the 451st Judicial District Court, Kendall County, Texas
Trial Court No. 15-405CCL
Honorable Bill R. Palmer, Judge Presiding

#### OPINION ON MOTION FOR REHEARING

Opinion by:    Irene Rios, Justice

Sitting:    Rebeca C. Martinez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: November 27, 2019

REVERSED; RENDERED IN PART; REMANDED

Appellee's motion for rehearing is denied. This court's opinion and judgment dated July 31, 2019 are withdrawn, and this opinion and judgment are substituted.

This appeal arises from Ohio Development, LLC's ("Ohio Development") request for declaratory judgment against the Tapatio Springs Homeowners Association ("the HOA"). Ohio

Development claimed an easement over Wild Turkey Boulevard ("the Boulevard"),[1] a road that is privately owned and maintained by the HOA, to reach and develop a residential subdivision on acreage north of property maintained by the HOA. The trial court found in favor of the HOA, and Ohio Development appeals. We reverse the trial court's judgment, render in part, and remand to the trial court for further proceedings.

## BACKGROUND

The 711 Ranch, owned by the Nordan Trust, originally encompassed 11,381.19 acres in Kendall and Kerr Counties. On June 3, 1998, the Nordan Trust conveyed the entirety of the 11,381.19 acres to Jabat Investments, Ltd., and the 711 Ranch was subdivided into the Champee Springs Ranches. On January 13, 1999, Jabat conveyed 370.77 acres ("the Property") from Champee Springs Ranches Tract No. 2 to Tapatio Springs Development Company, Inc. ("TSDC"). The following day, January 14, 1999, TSDC conveyed the Property to Kendall County Development Company, L.P. ("KCDC"). In 2014, Ohio Development acquired the Property through a foreclosure sale deed from KCDC.

A section of the Property's southern boundary borders the northern boundary of the Tapatio Springs Subdivision (the "Subdivision"), the common areas and roadways of which are maintained by the HOA. Some evidence supports that the Property's southern boundary is a straight east to west line. However, there is a fence that bows south of that line for approximately half of a mile, and there is some evidence that supports the fence line is the Property's southern boundary. The area of land between the straight line and the fence line is about 1.628 acres, and is referred to as the "Strip." The Boulevard runs parallel to the Strip through a portion of the Subdivision.

---

[1] Wild Turkey Boulevard was previously known as Helen Boulevard and has also been referred to as Wild Turkey Drive.

After it acquired the Property, Ohio Development filed an application for preliminary plat approval in order to begin development of a residential area on the Property. A survey indicated that the southern boundary of the Property and the northern fence line bordering the Boulevard are not entirely contiguous as they are separated by the Strip. Therefore, to access the Property from the Boulevard, Ohio Development would need to cross the Strip. A Kendall County Commissioner "declined to approve the preliminary application until Ohio [Development] could establish the location of its southern boundary line and that Ohio [Development] has a right of access to the southern part of its property using [the Boulevard,] an existing road[,] located in the subdivision." *Ohio Dev., LLC v. Tapatio Springs Homeowners Ass'n*, No. 04-17-00002-CV, 2017 WL 2351103, at *1 (Tex. App.—San Antonio May 31, 2017, pet. denied) (mem. op.).

Ohio Development thereafter filed suit against the HOA and "Unknown Owners" of the Strip to establish a right to use the Strip and the Boulevard to access the Property. Prior to the trial on the merits, Ohio Development filed a Notice of Abandonment of Claims, in which it abandoned its trespass-to-try-title claim against the HOA for ownership of the Strip. Following the presentation of Ohio Development's case during the trial on the merits, the HOA moved for judgment in its favor, arguing Ohio Development did not carry its burden. The trial court granted the HOA's motion, entered a take-nothing judgment on each of Ohio Development's claims, and awarded the HOA $383,682.00 in attorney's fees. The trial court entered findings of fact and conclusions of law, to which Ohio Development filed objections and a request for additional findings and conclusions. Ohio Development additionally filed a motion for reconsideration. The trial court overruled Ohio Development's motions, and this appeal followed.

## ANALYSIS

Ohio Development contends: the trial court improperly disregarded the testimony of three witnesses; the HOA lacked standing to contest Ohio Development's right to use the Strip or the

authority to interfere with Ohio Development's use of the Strip; Ohio Development established an easement to use the Boulevard to access the Property; and the evidence is insufficient to support the attorney's fees ordered by the trial court.

## Easement Interests

Ohio Development contends it established an express easement to use the Boulevard to access the Property. In response, the HOA argues "the reserved easement was not appurtenant, did not run with the land, and was never conveyed to Ohio [Development], and would not benefit the [Property]."

### *Standards of Review*

We review declaratory judgments under the same standards as other judgments and look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. TEX. CIV. PRAC. & REM. CODE ANN. § 37.010; *Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 196 (Tex. App.—Dallas 2013, pet. denied). When a declaratory judgment is entered after a bench trial, we review the trial court's factual findings and conclusions of law de novo. *Van Dam v. Lewis*, 307 S.W.3d 336, 339 (Tex. App.—San Antonio 2009, no pet.).

We review the findings for sufficiency of the evidence using the same standards we apply to jury findings. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994*)*. In reviewing a finding for legal sufficiency, we consider the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id*.

***Applicable Law***

"Unlike a possessory interest in land, an easement is a nonpossessory interest that authorizes its holder to use the property for only particular purposes." *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). Easements "may be created by express grant, implication, necessity, estoppel, or prescription." *Fallis v. River Mt. Ranch Prop. Owners Ass'n*, No. 04-09-00256-CV, 2010 WL 2679997, at *4 (Tex. App.—San Antonio July 7, 2010, no pet.) (mem. op.); *Harrington v. Dawson-Conway Ranch, Ltd.*, 372 S.W.3d 711, 722 (Tex. App.—Eastland 2012, pet. denied). An easement may also be created "by the purchase of land with reference to a map or plat showing abutting roads or streets." *Horne v. Ross*, 777 S.W.2d 755, 756 (Tex. App.—San Antonio 1989, no pet.). Additionally, "[s]ome cases that discuss easements created by the sale of land with reference to a plat explain that the purchaser acquires an easement in the platted roads by implication." *Id*. at 757. "This Court has consistently held that the conveyance of land by reference to a map or plat, upon which lots and streets are laid out, results in the purchaser or one holding under him, acquiring by implication a private easement in the alleys or streets shown on the plat."). *San Antonio v. Olivares*, 505 S.W.2d 526, 530 (Tex. 1974). Nevertheless, "an easement may not create a right or interest in a grantee's favor which the grantor himself did not possess." *Carrithers v. Terramar Beach Cmty. Improv. Ass'n*, 645 S.W.2d 772, 774 (Tex. 1983) (citing *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 202 (Tex. 1962) ("It is elementary that one corporation cannot dedicate land owned by another or grant easements over land not owned by it.")).

***Express Easement***

When considering the terms of an express easement, "[t]he rules of contract construction and interpretation apply." *DeWitt Cty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999).

> When a court concludes that contract language can be given a certain or definite meaning, then the language is not ambiguous, and the court is obligated to interpret the contract as a matter of law. A term is not ambiguous because of a simple lack of clarity. Nor does an ambiguity arise merely because parties to an agreement proffer different interpretations of a term. An ambiguity arises only after the application of established rules of construction leaves an agreement susceptible to more than one meaning. Further, for an ambiguity to exist, both potential meanings must be reasonable.

*Id.*; *see also Canyon Reg'l Water Auth. v. Guadalupe-Blanco River Auth.*, 258 S.W.3d 613, 616 (Tex. 2008) ("The express terms of the easement determine the scope of the easement holder's rights."); *Sundance at Stone Oak Ass'n v. Ne. Indep. Sch. Dist.*, No. 04-12-00610-CV, 2013 WL 6022259, at *3 (Tex. App.—San Antonio Nov. 13, 2013, no pet.) ("When considering the express easement's terms, the parties' intentions—as expressed in the grant—determine the scope of the easement.").

"As with contract construction generally, evidence of the context and circumstances surrounding the execution of an express easement may in some instances be relevant in determining the meaning of the words the parties have chosen." *Davis v. Johnston*, No. 03-10-00712-CV, 2012 WL 2499472, at *16 (Tex. App.—Austin June 28, 2012, no pet.) (mem. op.) (citing *Hous. Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011)). When an express easement lacks specificity as to its purpose and use, "ingress and egress includes not only the use required at the time of the grant, but also the right to use the easement for any purpose connected to the use of the property." *Boerschig v. Sw. Holdings, Inc.*, 322 S.W.3d 752, 760 (Tex. App.—El Paso 2010, no pet.); *see also Bradshaw v. Lower Colo. River Auth.*, 573 S.W.2d 880, 883–84 (Tex. App.—Beaumont 1978, no writ) (finding that an easement that granted "right of ingress and egress across said land ... [to] reach the water's edge" was not limited solely to cattle grazing but also included the right to use the water for recreational purposes).

**Relevant Deed and Declaration Provisions**

To determine whether Ohio Development holds an express easement that is appurtenant and runs with the land, we examine the relevant deed and declaration provisions to understand what was expressly conveyed. We begin with the warranty deed from Nordan Trust to Jabat, in which number 11 of the reservations from and exceptions to the conveyance and warranty conveys the following:

> Any matters related directly or indirectly to that portion of subject property lying within fence, but outside record title at the Northeast property line noted as 2.7 acres of land, more or less; and at the Southeast property line along Tapatio Springs Subdivision being 2.2 acres of land, more or less, as shown on the survey plat dated April 29, 1998, by Voelkel Engineering Co. Grantor makes no warranties or representations whatsoever, express or implied, with respect to said 2.7 acre tract or to said 2.2 acre tract, such tracts being conveyed herein to Grantee without warranty or representation, including any warranties that might arise under common law and the warranties in Section 5.023 of the Texas Property Code, as amended, all of which are expressly disclaimed as to such property.

Exhibit A of the special warranty deed conveying the Property from Jabat to TSDC on January 13, 1999 provides the following legal description of the Property as surveyed.

> BEGINNING at a fence post located in the northwesterly line of Helen Blvd. (A.K.A. Wild Turkey Drive) and marking an interior corner of Tapatio Springs Subdivision, Unit 2, according to the map or plat thereof recorded in Volume 1, Page 197, Plat Records of Kendall County, Texas;
>
> THENCE, South … West, along the northerly line of Tapatio Springs Subdivision, Unit 2, same being a southerly line of the 11,381.19 acres … .

Upon the conveyance, TSDC owned both the Property and the Subdivision property. For this reason, Jabat and TSDC excluded the conveyance of any easements as follows:

> This conveyance does not include any access, ingress or egress rights or interest or easements for access, express or implied, to this PROPERTY since Grantee owns other property ("Grantee's Adjoining Property") adjacent to the PROPERTY which has access to and from a public road. Grantee … hereby (i) acknowledges that the only ingress and egress to the Property is through Grantee's Adjoining Property and (ii) WAIVES AND RELEASES any and all claims and causes of action for any and all claims for ingress and egress access to the PROPERTY (including without limitation implied easements, easements of necessity and easements by

prescription) over, upon and across the remainder of Lot 2 of CHAMPEE SPRINGS RANCHES[2] … .

However, TSDC owned both properties for only that day, as it sold the Property to KCDC the next day. The special warranty deed with vendor's lien from TSDC to KCDC contained the following language:

> "Grantor … does GRANT, SELL, and CONVEY unto said Grantee the following property (the "Property"): Being 370.377 acres … TOGETHER WITH a *non-exclusive perpetual right of ingress and egress pertaining to the use of this Property over and across Wild Turkey Drive*, as provided by Grantor pursuant to Article X, Section 1…of the Declaration…for Tapatio Springs dated September 2, 1982."

(emphasis added). This language indicates the Property became subject to the Declaration and conveyed an easement right over the Boulevard as provided by the Declaration.

To determine what easement rights existed when TSDC conveyed the Property to KCDC, we next examine the Declaration filed in 1982, relating to the Subdivision, as well as the First and Second Amended Declarations of 1994 and 1995, respectively.[3] The 1982 Declaration, Article XII Section 1, anticipates that additional real property could be added to the Subdivision and stipulates that the additional real property will be subject to the Declaration.

> Declarant hereby declares that it contemplates that at a future time or times, the Properties may…be expanded by adding thereto *additional real property* comprising successive phases of Tapatio Springs Subdivision. Such additional property may be annexed in whole or in part, from time to time, and at more than one time, in order that such additional property, and all improvements situated thereon, *shall become a part of the Properties described and defined in this Declaration*. All such annexations and additions, if any, shall not require the consent of the Association or any owner or mortgagee.

(emphasis added).

---

[2] The Nordan Trust conveyed the entirety of the 711 Ranch acreage to Jabat, and the 711 Ranch was subdivided into the Champee Springs Ranches on the same day of that conveyance. Later, the 370.77 acres that comprise the Property and were a part of Champee Springs Ranches Tract No. 2 were conveyed from Jabat to TSDC.

[3] Tapatio Springs, Inc. obtained the Subdivision property on September 2, 1982, and on September 7, 1982, filed the first Declaration. On September 17, 1990, Tapatio Springs, Inc. conveyed the Subdivision property to Tapatio Springs Golf Resort, and on September 11, 1991, Tapatio Springs Golf Resort conveyed the Subdivision property to TSDC.

Additionally, Article X of the 1982 Declaration defines the easement reserved to Tapatio Springs, Inc. as follows:

Section 1. Easement Over Platted Roads Reserved to Tapatio Springs, Inc. Tapatio Springs, Inc. reserves, and shall have, a perpetual non-exclusive easement and right-of-way over and across all platted roadways upon the properties for the purpose of providing vehicular and pedestrian access and utility services to adjoining or neighboring lands. Said easement and right-of-way shall be for the benefit of Tapatio Springs, Inc. and its successors and assigns and shall be valid notwithstanding the use of any such adjoining or neighboring properties for any purpose or purposes inconsistent with the user of the Properties permitted by this Declaration.

The Declaration stipulated a reserved easement and right-of-way unto Tapatio Springs Inc., as well as its successors and assigns, over all platted roads, which included Wild Turkey Boulevard, providing vehicular access to adjoining or neighboring lands. Moreover, the reservation states that such right-of-way shall be for the use and enjoyment of Tapatio Springs, Inc.'s successors and assigns. The Declaration also grants Tapatio Springs, Inc., as well as its successors and assigns, the right to acquire additional lands and amend the Declaration.

Prior to the filing of the First and Second Amended Declarations of the Subdivision, two additional conveyances occurred. Through an assumption warranty deed with vendor's lien, which was executed on September 17, 1990, Tapatio Springs, Inc. conveyed the Subdivision property to Tapatio Springs Golf Resort. The Golf Resort conveyed the property to TSDC on September 11, 1991, also through an assumption warranty deed with vendor's lien. Under the terms of the Declaration, each party became the successive Declarant. TSDC filed the First Amended Declaration in 1994, wherein it declared itself "the successor declarant … as defined under Article 1, Section 7 of the [Declaration]." On February 21, 1995, via a deed without warranty, TSDC conveyed "[a]ll of the roadways within the Tapatio Springs Subdivision" to the HOA, with the exception of two roadways that are not relevant to this discussion. The deed further states that "[e]asements, rights-of-way, and prescriptive rights, whether of record or not; all presently

recorded instruments (other than liens and conveyances) that affect the property" are reserved from and excepted to the conveyance.

The Second Amended Declaration included a rewriting of Article 1, section 4, which defines the "Common Area." The Declaration includes additional language stating that changes made to section 4, are "subject, however, to the easements … and reservations applicable thereto by virtue hereof and/or by virtue of the recorded subdivision map … ."

In 2006, through a special warranty deed, TSDC and KCDC conveyed to the HOA "[a]ll real property defined as 'Common Area' as described in the Second Amendment … subject to all of the rights, privileges and appurtenances reserved to Grantor in the Declaration … as thereafter amended." The foreclosure sale deed from KCDC to Ohio Development in 2014 conveys the Property "[t]ogether with all [], easements … and rights appurtenant to the real property, as described in the Deeds of Trust."

**Discussion**

"[I]t is the rule that an easement is never presumed to be in gross, when it can fairly be construed to be appurtenant." *Ginther v. Bammel*, 336 S.W.2d 759, 763 (Tex. Civ. App.—Waco 1960, no pet.). "Whether an easement is in gross or appurtenant must be determined by a fair interpretation of the grant creating the easement, aided if necessary, by situation of property and surrounding circumstances." *McDaniel v. Calvert*, 875 S.W.2d 482, 484 (Tex. App.—Fort Worth 1994, no writ). Moreover, a court should "consider not only the terms of the grant itself, but the nature of the right and surrounding circumstances … Such circumstances are always relevant in construing language alleged to create an easement." *Mitchell v. Castellaw*, 151 Tex. 56, 63, 246 S.W.2d 163, 166 (1952) (internal citations and quotations omitted). The Supreme Court of Texas stated in *State v. Meyer*:

> An appurtenant easement is an incorporeal right, which is attached to and belongs with some greater or superior right … It is said to be appurtenant when it inheres in the land, concerns the premises, and is necessary to the enjoyment thereof, and is in the nature of a covenant running with the land, attached to the lands to which it is appurtenant, and … [it] cannot exist unconnected with the land, to the enjoyment and occupation of which it is incident.

403 S.W.2d 366, 374 (Tex. 1966) (citing 2 Thompson on Real Property, § 321, p. 64 (1961)). "Easements in which the benefits are personal to an individual without regard for his ownership of a specified parcel of land are easements in gross, whereas easements in which the benefits are for a specified parcel of land regardless of the identity of the owner are easements appurtenant." *Daniel v. Fox*, 917 S.W.2d 106, 110 (Tex. App.—San Antonio 1996, writ denied) (internal quotations and citations omitted). "[T]he right of entrance to and exit from an estate is generally an appurtenant easement." *Id*.

In the 1982 Declaration, TSI reserved "a perpetual non-exclusive easement and right-of-way over and across all platted roadways upon the properties for the purpose of providing vehicular and pedestrian access and utility services to *adjoining or neighboring lands*. Said easement and right-of-way shall be for the benefit of [TSI] and *its successors and assigns*." (emphasis added). Moreover, the Declaration contemplates the future acquisition of neighboring lands, which "*shall become a part of the Properties described and defined in this Declaration…[and] shall not require the consent of the Association*." (emphasis added).

The Declaration clearly states that the easements therein "*shall run with*[] the said Properties and be binding upon all parties … their heirs, successors and assigns." (emphasis added). The provision expressly binds both the land and the parties, whoever they may be at any given point in time. The Declaration binds a specified parcel, being the properties, regardless of the identity of the owner. This necessarily makes the easement appurtenant, rather than in gross.

The record indicates the Subdivision roads were not conveyed to the HOA until the 1995 deed from TSDC. Although the 1990 Deed Without Warranty conveying Subdivision property from Tapatio Springs, Inc. to Tapatio Springs Golf Resort did not contain an expressly conveyed easement, the easement created in the Declaration of 1982 was not rendered void. *See Shelton v. Kalbow*, 489 S.W.3d 32, 46 n.11 (Tex. App.—Houston 2016 pet. denied) (stating that "[t]his type of roadway easement is an easement appurtenant that 'automatically' follows the dominant estate, regardless of whether it is referenced in a particular intervening deed" when discussing a situation in which intervening deeds did not contain a description of an easement but a subsequent writing did). Because the roadways belonged to Tapatio Springs, Inc. at the time of the conveyance, they necessarily became the servient estate for the purposes of allowing access to the dominant estate, the Property and the Subdivision property. Accordingly, we conclude Ohio Development holds an express easement over the Boulevard. We will therefore render judgment that Ohio Development holds an express easement over Wild Turkey Boulevard.

### Attorney's Fees

Ohio Development argues the evidence is insufficient to support the amount of attorney's fees ordered by the trial court. A court has discretion to award fees to the non-prevailing party. *Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637–38 (Tex. 1996); *see Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 468 S.W.3d 557, 575 (Tex. App.—San Antonio 2014, pet. denied); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (stating trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just"). However, a court "is [also] well within its discretion to deny or award attorney's fees based on the outcome of the case." *Brazoria County v. Texas Comm'n on Envtl. Quality*, 128 S.W.3d 728, 744 (Tex. App.—Austin 2004, no pet.). Because our disposition

may affect the trial court's findings on this issue, we remand this cause to the trial court for it to consider and exercise its discretion on the amount of attorney's fees, if any.

In light of the above resolution, we need not address Ohio Development's remaining issues. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

Based upon the reasoning above, we reverse the portions of the trial court's judgment that (1) orders Ohio Development "take nothing" on its claims, and (2) awards attorney's fees and costs to the HOA. Additionally, we render judgment that Ohio Development holds an express easement over Wild Turkey Boulevard. We remand the case to the trial court for the limited purpose of (1) entering a judgment conveying said easement, and (2) determining attorney's fees.

Irene Rios, Justice